### CITY OF ALTUS et al. v. MILLIKIN et ux.

No. 12674—Opinion Filed Feb. 19, 1924.

**1. Municipal Corporation—Negligence—Attractive Nuisance—Liability for Death of Infant—Negligence Question for Jury.**

A municipal corporation which acquires a right of way and agrees to build a spillway under a certain fill or embankment, to prevent water backing up and creating a lake or pond, and fails to construct such spillway, and thereby brings about the creation of such lake or pond, and renders the same extremely dangerous by excavations in the center thereof, may be held liable for the death of a 13 year old boy therein on the theory of attractive nuisance. Whether such

facts constitute negligence is a question for the jury, and said question was properly submitted to the jury. Rule announced in City of Shawnee v. Cheek, 41 Okla. 227, 137 Pac. 724, applied.

**2. Same—Contributory Negligence of Child.**

A dangerous, artificial, and attractive condition which could have been made safe without impairment of the city's beneficial use of the same, and which has not been made safe, involves the question of reckless disregard of the safety of children of tender years who a person of ordinary prudence must anticipate would probably be attracted to, and come in contact with and be injured by such dangerous conditions. The question as to whether a boy aged 13 years and six months is guilty of contributory negligence by going wading in a pond created by the action of the defendant, where said boy was unable to swim, and was drowned by getting into a deep hole in the center of said pond made by defendant's excavations, is a question of fact for the jury, to be decided under proper instructions which take into account the fact that the deceased was under 14 years of age.

**3. Same—Instructions.**

Record examined, and held, that the instructions of the court on negligence and liability (including contributory negligence) properly state the law.

**3. Same—Recovery by Parents—Elements of Recovery—Instructions.**

In this action the court gave the jury the following instruction: "You are instructed that from the very nature of a boy's services to his parents during his minority, it is impracticable to state definitely in dollars and cents just what services are worth, and in determining the value of such services, you may bring to your aid your knowledge and experience of the nature and kinds of services a boy generally renders and the probable value thereof to his parents." This is alleged as reversible error. The court further instructed properly as to the measure of recovery by parents for the loss of the services and earnings of a child in an action for wrongful death. Held, that the instructions as a whole properly state the law. Held, further, that the foregoing instruction complained of did not advise the jury that they might in this action transcend the ordinary discretion which is given to jurors in trying facts and drawing the proper inferences from them.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by J. M. Millikin and Mary L. Millikin, his wife, against the City of Altus and others. Judgment for plaintiff, and defendants appeal. Affirmed.

L. A. Pelley and P. K. Morrill, for plaintiffs in error.

A. R. Garrett, for defendants in error.

Opinion by LYONS, C. The parties will be referred to as in the court below. Plaintiffs sued defendant to recover damages which they allege accrued by reason of the death of their son, Bruce Hays Millikin. It is claimed that on the 21st day of May, 1920, Bruce Hays Milliken, son of the plaintiff, whose age on said date was 13 years, six months, and eight days, in company with three other boys of about the same age, were attracted by a certain pond of water and went into the same for the purpose of playing therein and wading about therein as is the habit and custom of boys of their age wherever opportunity offers. One of the boys was able to swim, but Bruce Hays Millikin was unable to swim. Bruce Hays Millikin, in wading across the south side of the pond or lake of water, stepped into a hole which had been excavated in the construction of a fill or embankment, and, being unable to swim, was drowned.

It is claimed that the plaintiffs had made a deed to the defendant city of Altus of a right of way, and that at the time said right of way was conveyed to the city of Altus by the plaintiffs it was understood and agreed between the plaintiffs and the city of Altus that a spillway would be built under a certain fill or embankment so the water would not bank up on plaintiffs' land and create a lake or pond of water.

It is also claimed that the city of Altus originally provided for the construction of a spillway to prevent the creation of a lake or pond of water, but thereafter made a change in its construction plans, and did not provide a spillway under said fill or embankment.

The pond in which Bruce Hays Millikin drowned is alleged to have been formed by the city's failure to create such spillway.

It is claimed by reason of the foregoing that the city of Altus was guilty of negligence in creating an attractive nuisance, and that it is responsible for the death of Bruce Hays Millikin. Upon a trial to a jury a verdict was rendered in favor of the plaintiffs against the city of Altus in the sum of $5,817. Judgment was rendered on the verdict; motion for a new trial was overruled and the defendants appeal.

The appellants' contentions may be summarized as follows:

(a) That the evidence is insufficient to disclose negligence.

(b) Error in the giving of instruction No. two to the jury, which advised them that in determining the nature of a boy's services to his parents during his minority, they might bring to their aid their knowledge and experience of the nature and kind of services he renders and the probable value thereof to his parents.

A reading of the evidence discloses that the city of Altus assumed the duty of constructing a spillway to prevent the creation of a lake or pond. If this had been done and this duty had been discharged, the accident would not have occurred. The proximate cause of the accident was a question of fact for the jury under proper instructions. The city's failure to construct a spillway and its excavations at the point where the pond was formed resulted in the creation of a pond which had a considerable shallow area, but contained a deep and dangerous hole where excavations had been made.

In the case of the City of Shawnee v. Cheek, 41 Okla. 227, 137 Pac. 724, Mr. Justice Thacker, after reviewing the authorities, makes the following statement of law:

"In view of the great value and vital importance of this right and the well-known disposition and lack of self-control in children, we see no sufficient reason why a landowner should not, at least, be deemed in duty bound to make reasonably safe any obviously dangerous, artificial, and attractive condition on his premises, which in character is clearly different from common and well-known dangerous natural conditions, especially when he is able to do so at little or no cost, and without appreciable impairment of his beneficial use of the same in all cases in which his failure to do so involves reckless disregard for the safety of children of tender years, especially children under seven years of age, or in the absence of evidence of capacity to be guilty of contributory negligence, under fourteen years of age, as a person of ordinary prudence must anticipate will probably be attracted to and may come in contact with and be injured by such dangerous conditions. It is anything less than wantonness for a landowner, with actual knowledge of such dangerous, artificial, and attractive conditions on his premses. and of facts from which, as a reasonably thoughtful person, he must know that merely technical, if not unconscious, trespassers in the persons of children living or° accustomed to congregate or be near may come in contact with and be seriously injured by such dangerous conditions, to abstain from removing the danger of such conditions, especially if he is able to do so at little or no cost, and without appreciable impairment of his beneficial use of the premises."

See, also, City of Ardmore v. Swain, 42 Okla. 741, 142 Pac. 1104.

The instructions of the court on the question of negligence, liability, and contributory negligence are in harmony with the foregoing decisions. The testimony in this case required the submission of the question of negligence to the jury, and the plaintiffs in error's assignment of error on this point fails.

We pass now to a discussion of error No. two, as follows:

"The said court erred in giving the following instructions to the jury, to wit: 'You are instructed that from the very nature of a boy's services to his parents during his minority it is impracticable to state definitely in dollars and cents just what such services are worth, and in determining the value of such services you may bring to your aid your knowledge and experience of the nature. and kind of services a boy generally renders and the probable value thereof to his parents'."

It is proper in considering this assignment of error to take into consideration instruction No. 8, which is as follows:

"You are instructed that the parents are entitled to the services and earnings of their children until they reach their majority. In arriving at the net amount of such earnings, you will ascertain what such earnings or services were reasonably worth or would amount to, and from this sum you will deduct reasonable charges and upkeep of said child, such as food, clothing, medical expenses, and schooling, etc. Should your verdict in this case be in favor of the plaintiffs, the amount of your verdict should be the actual pecuniary loss which plaintiffs have sustained on account of the death of their son, which will be the value of his services or earnings, until he should have reached his majority, less the expenses of his said upkeep as given you above, with the reasonable and necessary medical and burial expenses, not to exceed the sum of $15 for medical services, $235 for burial expenses. and $5,-567 for services and earnings, being the several amounts claimed in their petition."

There is testimony in the record relative to the actual value of the services of the deceased minor to his parents, based on his earnings and work on the farm, sufficient to sustain the recovery under instruction number eight, supra. We would, therefore, be justified in holding that even though the

instruction complained of was not proper, that the verdict should be sustained.

In the case of Union Pacific Railway Company v. Dunden, 14 Pac. 301, a decision by the Supreme Court of Kansas, the court makes the following statement:

"It is next claimed that the trial court erred in instructing the jury that, if they found for the plaintiff, they could use their common knowledge in assessing his damages, without evidence as to the amount thereof. The language of the instruction may perhaps be criticised; but the instruction, as applied to this case, was neither erroneous, nor misleading. In such a case as this the jury may estimate the pecuniary damages from the facts proved, in connection with their common knowledge and experience in relation to the matters of common observation. It is not absolutely necessary that any witness would have expressed an opinion of the amount of pecuniary loss. Damages are to be assessed by the jury with reference to the pecuniary injury sustained by the next of kin in consequence of such death. This is not the actual present loss only which the death produces, and which could be proved, but prospective losses also. How this pecuniary damage is to be measured, or what shall be the amount, must be left largely to the discretion of the jury. The court undoubtedly intended by the instruction to inform the jury, and they must have so understood, that if they found for the plaintiff, they could use their common knowledge in assessing his damages, without direct evidence of the specific pecuniary loss. The jury had presented to them evidence of the parents of the deceased, their position in life, the occupation of the father, the condition of his health, the age of his son, his intelligence, his ability to earn money, etc.; and it was their province from this evidence and their general knowledge, to form an estimate of the damages with reference to the pecuniary injuries, present and prospective, resulting to the next of kin. It is impracticable to furnish direct evidence of the specific loss occasioned by the death of a child; and to hold that, without such positive proof, a plaintiff could not succeed, would, in effect, defeat any substantial recovery."

We think that the instruction complained of did not advise the jury that they might in this case transcend the ordinary discretion which is given to jurors in trying facts and drawing the proper inferences from them. Neither jurors nor judges are required to lay aside their experience and common knowledge in weighing controverted facts, or in drawing inferences from testimony, and it is proper for the court to so instruct the jury.

It is clear in any event that when instruction number eight is considered with the instruction complained of the jury could not have been misled.

An examination of the record discloses that the case was tried fairly, on controverted testimony; that the instructions of the court properly state the law, and that the verdict is not contrary to law, or in any sense subject to the disapproval of a court of justice.

The jury found under sufficient evidence that the negligence of the city of Altus had the melancholy result of causing the death of a young, active boy of 13 years of age. The damages given appear to be in an amount based wholly on the theory of compensation and the evidence supports the verdict.

We therefore find that there is no error in the record, and the judgment of the trial court is affirmed.

By the Court: It is so ordered.