Argued July 9; affirmed October 13, 1931

## KILLAM *v.* MULTNOMAH COUNTY ET AL.
### (4 P. (2d) 323)

*W. O. Sims,* of Portland (Sims & Sims, of Portland, on the brief), for appellant.

*Charles Cohn,* Deputy District Attorney, of Portland (Stanley Myers, District Attorney, and J. H. Stockman, both of Portland, on the brief), for respondents Multnomah county, and Grant Phegley, Amedee M. Smith, and Clay S. Morse, as county commissioners.

*Marvin K. Holland,* of Portland, for respondents C. L. and Nellie Fae Wilson.

CAMPBELL, J.  On September 8, 1882, a plat of what is known as East Portland Homestead was duly filed and recorded in the office of the county clerk of Multnomah county.  Joseph Paquet and wife, the then owners of the property, dedicated the streets to the use and benefit of the public forever.  Sometime thereafter, the land in question herein, being a part of said East Portland Homestead, was conveyed to the Oregon-Washington Railroad and Navigation Company. The date of this sale does not appear in the record herein, but was some time in the "Eighties".  On November 6, 1918, plaintiff contracted to buy from said railroad company the following described real estate:

"All of that part of the South Half of the Northwest Quarter of the Southwest Quarter of Section 21, T. 1, N. R. 2 E. of the W. M. lying Northerly and Westerly of the center line of Sandy Boulevard, County of Multnomah, State of Oregon, subject to the easements for county roads thereon."

This land was a portion of the East Portland Homestead as platted and dedicated in 1882.

On June 10, 1922, pursuant to said contract, a deed was executed by said railroad company conveying the above described premises to plaintiff with the same description and reservations as in the contract.  The recorded plat of East Portland Homestead shows that Cherry street, 20 feet wide, was dedicated on and along

the full length of the north boundary line of said tract. This street has never been improved or opened to traffic. On April 19, 1924, Roseway Plat, No. 2, was duly filed and recorded by the county clerk of Multnomah county, showing a tract of land immediately adjoining East Portland Homestead tract on the north, platted into lots and blocks with streets dedicated to the public. This plat shows Skidmore street running westerly and lying along and contiguous to the north boundary of Cherry street, from the center of Sandy boulevard to within about 85 feet from the west end of Cherry street where Skidmore street changes to a northwesterly direction and leaves a small triangular tract, designated as Block 38 of Roseway Plat No. 2, between it and Cherry street. Skidmore street westerly from the center of Sandy boulevard is 25 feet wide to the place where it changes direction, when it gradually increases in width to 50 feet at the point where it ceases to be adjacent to Cherry street.

Plaintiff brought this suit against Multnomah county to restrain the county from opening up and improving Cherry street, alleging that she is the owner of the street by virtue of adverse possession and that she made valuable improvements thereon without protest from any of the officials of the county or from any one else. Multnomah county filed an answer denying these allegations. Defendants C. L. Wilson and Nellie Fae Wilson were permitted to intervene and filed an answer showing that they were the owners of considerable property in Roseway No. 2, some of which abutted on Skidmore street immediately north of Cherry street, and where both streets were contiguous, and further alleging that their property would be damaged unless Cherry street was kept open its full width.

The questions presented are: (1) Did Cherry street become vacated by operation of law because it was not opened to travel within four years of its dedication? (2) Was Cherry street lost as a public street by reason of adverse possession? (3) Did the public lose its right to have Cherry street opened because the officials of Multnomah county did not protest at the time plaintiff made improvements on a part of the street?

The territorial legislature of Oregon at its fifth and sixth sessions adopted a code of laws for the government of the territory; among others, "An Act Relating to Roads and Ferries":

"Provided: That all territorial and county roads which have been or may hereafter be located for the term of two years and not opened, shall be considered as vacated." Statutes of Oregon, 1855, p. 492, section 24.

The constitution of the state of Oregon provides:

"All laws in force in the territory of Oregon when this constitution takes effect, and consistent therewith, shall continue in force until altered or repealed." Oregon Constitution, Art. 18, section 7.

The legislature of the state of Oregon at its first regular session reenacted, in effect, the above provision of the territorial code.

"If any part of any road in this state shall not be opened for two years from the time of its location, the same shall become vacant." Laws of Oregon, 1860, p. 42, section 37.

The legislature of 1864 amended the law of 1860 in this respect by extending the time to four years instead of two. All these enactments had particular reference to roads laid out by county courts and not to streets or roads dedicated to the public by the realty owner.

"Every donation or grant to the public, including streets and alleys * * * marked or noted as such on the plat of the town wherein such donation or grant

may have been made, shall be considered to all intents and purposes as a general warranty to the said donee or donees, grantee or grantees, for his, her, or their use for the purposes intended by the donor or donors, grantor or grantors, as aforesaid." Oregon Code 1930, § 56-703. The law was enacted in 1864 and has been in force ever since.

"A municipal corporation is under no obligation to open a dedicated street until its use is deemed necessary by the common council. Until that time the dedicator, if the land has not been conveyed, or his grantee whose premises abut upon the street often makes such reasonable use of the proposed highway as is not inconsistent with the right of the municipality to open and improve the street when it is considered essential to the public need. For these reasons the possession of an abutting proprietor of a part of or an entire dedicated street will not defeat the right of a municipal corporation to open and improve the highway, unless the improvements made therein are permanent and valuable and have been maintained for the period of the statute of limitations." *Barton v. Portland,* 74 Or. 75, 144 P. 1146.

Cherry street was not vacated by reason of non-user or failure to open within four years of the date of dedication. There is no evidence of adverse possession prior to the date of plaintiff's taking possession of the lands. All that any of the witnesses testified to is that Cherry street had not been opened up for travel. The mere fact that the dedicators of the plat remained in possession does not raise a presumption that they intended to hold adversely. Neither is there any evidence that the O.-W. R. & N., the grantee of the dedicators, was holding adversely to the public, nor does the testimony show that said grantee was in possession for more than 10 years prior to 1895, when a law changing the statute of limitations as against municipal corporations was passed.

"The rights of cities and towns (whether incorporated or not), within the state of Oregon to land dedicated to or otherwise acquired for the public use for streets, highways, parks, or public places, shall not be extinguished by any adverse possession, however long continued, and no title to such lands as against any city or town (whether incorporated or not), shall be hereafter acquired in this state through the operation of the statute of limitations." Gen. Laws, 1895, p. 57; Oregon Code 1930, § 44-3501.

"Section 1. That all streets or alleys in the unincorporated towns in this state are hereby declared to be public highways.

"Section 2. The county courts * * * shall have full power and jurisdiction over all streets and alleys in unincorporated towns, in the same manner and to the same extent as the courts now have over all public highways." Laws of Oregon, 1895, p. 57; Oregon Code 1930, §§ 44-2117, 44-2118.

In the case at bar there is no testimony of any claim by any of the abutting property owners to title in Cherry street, free from the easements of the public, previous to the plaintiff's. The plaintiff, when she took title, was put on notice by the terms of her deed, "subject to the easements for the county roads thereon." She also had constructive notice, and by the exercise of ordinary care would have had actual notice, by reason of the recorded plat showing Cherry street dedicated to the public:

"In order therefor, to acquire title to the land lying in the street as portrayed on the map, it is incumbent on the plaintiff to show something beyond mere possession and user on her part. It is incumbent upon her to disclose by the evidence some conduct by the city leading the plaintiff on to do acts such as it would be against equity and good conscience to permit the city at this time to disavow." *Oliver v. Synhorst*, 58 Or. 582,

109 P. 762, 115 P. 594; *Cruson v. City of Lebanon,* 64 Or. 593, 131 P. 316; *Dabney v. City of Portland,* 124 Or. 54, 263 P. 386.

■■ Plaintiff constructed certain buildings on her property. Part of these buildings project into Cherry street. The buildings were not of such a character that the removal of the part which occupies Cherry street would greatly damage plaintiff. There is no evidence that the attention of any of the county officials was called to the fact that these buildings encroached on the street at the time of their construction. We can not see where the doctrine of equitable estoppel should be applied. This doctrine should only be applied in exceptional cases: *Oliver v. Synhorst,* supra; *Cruson v. City of Lebanon,* supra.

It is unnecessary to pass on the question as to whether the defendants Wilson had a right to intervene. They did so at their own solicitation. They were seeking the same remedy that the county sought. However, the plaintiff would not be injured by having every question in connection with the public use of Cherry street determined.

Finding no error, the decree of the lower court is affirmed, neither party to recover costs and disbursements in this court.

Bean, C. J., Brown and Belt, JJ., concur.