Argued April 21; reversed June 9, 1936

# WHEELER *v.* CITY OF ST. HELENS ET AL.

(58 P. (2d) 501)

*T. Walter Gillard,* of Portland (William P. Lord, of Portland, on the brief), for appellant.

*Glen R. Metsker,* of St. Helens (J. W. Day, of St. Helens, on the brief), for respondents.

ROSSMAN, J. The sole issue presented by this appeal is whether the circuit court erred when it sustained a demurrer to the complaint which was based upon a contention that the complaint did not state a cause of action. The complaint alleges that the charter of the defendant municipality confers upon its common council authority to prevent nuisances and remove obstructions from the public streets; that within the city is a legally dedicated thoroughfare known as Plymouth street "which said Plymouth street was accepted by the city * * *; that between Sixteenth and Eighteenth streets said Plymouth street is partially improved and is continuously and constantly used as a thoroughfare * * *; the surrounding territory on Plymouth street between Sixteenth and Eighteenth streets in the city of St. Helens is well populated and many homes are in that district; * * * that within the confines of said Plymouth street within the corporate limits of the city of St. Helens there is now and has been for many years past situated an abandoned rock quarry which abandoned rock quarry consists of a hole approximately 15 by 20 feet in length and width and from 10 to 15 feet deep, and for many years previous said hole has been filled with water, said water being to the depth of 10 to 12 feet. The said hole * * * has precipitous steep sides and is wholly and completely unguarded. * * * Surrounding this abandoned quarry are many bushes containing berries and plants containing wild flowers * * *". The complaint further alleges that "for a great while" small children had been accustomed to play in the vicinity of the quarry, and that "said abandoned quarry thus filled with water was especially and unusually attractive to

children and actually did attract children, and particularly the small children of the neighborhood, they using the said quarry for the purpose of throwing rocks, sticks, sailing boats thereon, etc. * * * Said abandoned rock quarry thus filled with water serves no useful purpose for the city. * * * The defendant city of St. Helens and the individual defendants, as officials of said city of St. Helens, negligently and carelessly permitted the said abandoned quarry filled with water to remain upon its premises uncovered and unguarded in a dangerous condition. * * * The defendant city of St. Helens and the individual defendants as officials of said city of St. Helens were in sole possession of the premises on April 28, 1935, and long prior thereto. * * * The expense of putting a fence around said unguarded rock quarry or filling the same and guarding against this danger to children would have been trifling". Next, the complaint alleges that Danny Wheeler, 4 years old, who was the son of the plaintiff, and of whose estate the plaintiff is the administrator, prior to his death resided with his parents "within less than one hundred feet from said abandoned rock quarry"; that he was "accustomed to play in and around said abandoned rock quarry"; and that on April 28, 1935, he was attracted to the quarry and in some manner unknown to the plaintiff fell into the water and was drowned. The complaint concludes with the following averment: "The defendants, and each of them in their individual capacities and as officials of the city of St. Helens, knew of the dangerous condition and had known thereof by reason of the deaths of several other children under similar circumstances by drowning in said abandoned rock quarry."

It will be observed that while the complaint alleges that Plymouth street between Sixteenth and Eighteenth streets is partially improved and is used as a thoroughfare it does not allege that the abandoned rock quarry is located in that part of Plymouth street. Since no such averment is made, and since the complaint alleges that the quarry is surrounded by "many bushes containing berries and plants containing wild flowers", it seems fair to infer that the quarry is located in an unimproved part of Plymouth street. Moreover, the plaintiff does not contend that his son came to his death while he was a traveler upon the street, but avers that the water-filled hole was an attractive nuisance which enticed the boy to go to it for the purpose of play. The very fact that the plaintiff pleads the attractive nuisance doctrine, which converts a trespasser into an invitee, is a strong indication that he does not believe that the portion of Plymouth street where the quarry stood was a thoroughfare open to public travel. Evidently, the plaintiff believes that his son was lured upon a parcel of land held by the city for future street purposes.

The bases of plaintiff's charge are contentions that the place where the child played was unsafe; that the defendants owed a duty to render it safe; and that, having neglected to perform this alleged duty, they became liable to the plaintiff when the child was drowned in the water. Defendants cite *Hendrickson v. City of Astoria*, 127 Or. 1 (270 P. 924), and *Caviness v. City of Vale*, 86 Or. 554 (169 P. 95). From *Hendrickson v. City of Astoria*, we quote:

"The city was not required to improve the street or sidewalk on Flavel Street, or any portion of it. It had the legal right to leave the street in a state of nature, * * *"

From *Caviness v. City of Vale*, we quote:

"There is no legal obligation resting upon a city to build sidewalks in the first instance. It may leave its streets in a state of nature and not be responsible for not having improved them, * * *"

See to like effect *Killam v. Multnomah County*, 137 Or. 562 (4 P. (2d) 323). It will be observed that no liability exists if a tort occurs upon unimproved property dedicated for street purposes, and if the property remains as nature made it; but, in the present instance, the property at the time of the injury was not in the condition that nature made it—a large deep hole with precipitous sides had been dug upon the property. This being true, a liability may exist if the defendants were under a duty to the deceased child to have done something concerning the water-filled hole.

 In his efforts to establish a liability, the plaintiff contends that the water-filled quarry constituted an attractive nuisance. The attractive nuisance doctrine in no way alters or expands the principle of negligence. It concerns itself with the status of the child. If he, without express invitation, was lured upon the land of another by the display of an attractive object which was kept there, the attractive nuisance doctrine changes his status from trespasser to invitee. It implies an invitation in his favor. But that is the only change which the attractive nuisance doctrine has made to our law. Of course, in order to recover, the child, or those deriving rights through him, must prove that the defendant was negligent. But, since an object does not fall within the category of an attractive nuisance unless it is of such a nature that it can readily inflict injury upon children, the tort portion of the charge is

proved when.it appears that the defendant kept such an object upon his property. In other words, under such circumstances, the defendant's property is not in proper order for the reception of his infant invitees. But the law of negligence itself requires a property owner to maintain his property in reasonably safe condition for the reception of those whom he invites upon it; and it is this principle of law—not the attractive nuisance doctrine—which governs the charge of negligence. Thus, it is observed that the only addition which the doctrine of attractive nuisance has made to our law is that it regards a child, who has been lured upon the land of another through the latter's display of an object peculiarly attractive to children, as an invitee. The ordinary tests promulgated by the law of negligence determine whether the property owner exercised due care to assure the safety of his invitees during the course of their visit. From the above it will readily be observed that it is unnecessary for the plaintiff to rely upon the attractive nuisance doctrine. The deceased child was upon property subjected to a public use and which was open to all who cared to go upon it. No fences or barriers were there. No effort had ever been made to exclude any one. This place was a continuation of a road "partially improved and continuously and constantly used as a thoroughfare." The place where this four-year-old boy played was frequented by other children, and had become through their long-continued use a neighborhood playground. The defendants had long been aware of all of the above. It is true that a trespasser does not become an invitee by multiplying his trespasses. But this was public property and the defendants were acquiescing in the children's conduct. It is entirely

fair to infer from these facts that they had invited the neighborhood children to play in this area. The child was not a trespasser while upon this property, whether an attractive nuisance was on display there or not: *Capp v. St. Louis*, 251 Mo. 345 (158 S. W. 616, 46 L. R. A. (N. S.) 731, Ann. Cas. 1915C 245); and *Doyle v. Chattanooga*, 128 Tenn. 433. (161 S. W. 997, Ann. Cas. 1915C 283, 4 N. C. C. A. 167). We shall, therefore, ignore the attractive nuisance doctrine as we proceed.

▪ ■ We shall now consider whether the conduct of the defendants in permitting this water-filled quarry to remain unguarded subjected them to any liability. As already stated, this parcel of land was vacant and unimproved except for the quarry which, according to the complaint, had been unused "for many years". If this parcel of land was serving a public or governmental province, the city is not liable to the plaintiff for the boy's death; even though, with its knowledge that children constantly played there, it failed to maintain the property in a reasonably safe condition. But, if the property served the city in its corporate capacity, it was the city's duty to exercise the same care in providing safeguards as would be expected of a private owner; and if it failed to exercise due care in rendering the property safe, the city is liable if such failure was the proximate cause of the child's death.

■ It is difficult to draw distinctly the line of demarcation between governmental and corporate powers. Without quoting the available definitions, it seems clear that this parcel of idle land was not promoting the peace, health or welfare of the residents of St. Helens. The property in no way played any part in the

administration of the municipal government. It did not facilitate any function of local government as is done by a city hall, a fire station, an emergency hospital, etc. We know of no public use to which the tract was being applied on the day the boy was drowned, except such use as the children of the neighborhood had devised for themselves; that is, as a neighborhood playground. To us, it seems that the land was being held awaiting the day when the city would have some use for it. Very likely it was accepted from the donor in the expectation that upon some future occasion the city might need it for street purposes. If this is true, a conclusion seems warranted that the property was held for the financial advantages which it conferred. It eliminated the need for its subsequent purchase of this property when the need for a street in that vicinity developed. Therefore, its relationship was to the corporate affairs of the municipality. We conclude that the property served the corporate, and not the governmental, provinces of the city. Our conclusion is supported, we believe, by the text of 19 R. C. L., Municipal Corporations, p. 1135, § 411. It follows that the defendant's liability for any tort committed in the maintenance of this property is the same as that of a private person owning a similar tract.

We come now to the question whether one upon whose land there is a body of water must provide a fence, guard or other protection to prevent children from being drowned therein. Decisions can readily be found holding that the owner of such property is under no liability when a drowning or an injury occurs. Many of the decisions are cited in 20 R. C. L., Negligence, p. 96, § 85; 45 C. J., Negligence, p. 779,

§ 183; and in the very comprehensive annotation appearing in 36 A. L. R., p. 34. Upon examination it will be found that most of these decisions hold nothing more than that water is not an attractive nuisance (see especially *Cox v. Alabama Water Co.*, 216 Ala. 35 (112 So. 352, 53 A. L. R. 1336); *Peters v. Bowman*, 115 Cal. 345 (47 P. 113, 598, 56 Am. St. Rep. 106, 1 Am. Neg. Rep. 4); and *Mindeman v. Sanitary District*, 317 Ill. 529 (148 N. E. 304)), unless its dangers are increased by additions made by the owner, or unless concealed dangers lurk in the water. But these decisions do not affect our problem. They merely refuse to deem the water an invitation to children to enter upon the property of the owner and thus reach the water. Such a conclusion is virtually necessary; otherwise every lily pond, fish pond, lagoon, etc., kept upon private property, would be deemed an invitation to all children to enter. The pool with which we are concerned was not upon private property. The child's right to enter arose from the fact that the property was subject to a public easement, and that the city, which had charge of the property, had permitted the neighborhood children to play there. No special invitation to enter was necessary. Hence, decisions determining whether pools upon privately owned property are attractive nuisances are of no help in solving the problem whether the conduct of the city, in permitting this pool, with its precipitous sides, to remain unguarded in this parcel of ground, was the exercise of. due care.

In *Doyle v. Chattanooga*, supra, the facts in all essential particulars parallel those before us. In that case a strip of land containing a water-filled quarry was dedicated to the city for street purposes. Even-

tually the dedicated property became converted into a street. One hundred and twenty feet from the water-filled quarry was a city park which was fenced. Plaintiff's two sons, 11 and 9 years of age, visited the park and then made their way over a stile in the fence to the pond. Here they played for a while on the edge of the quarry until the younger boy lost his footing and fell into the pond. The other leaped in to rescue him. Both were drowned. In reversing a judgment in favor of the city, the supreme court said:

"The city of Chattanooga, which was under obligation in its corporation capacity to abate nuisances, had permitted a condition to exist in one of its streets liable to cause injury to children of tender years, when a jury might find it knew or should have known that children were liable to be lured thereby to hurt or death. Whatever may be claimed for an owner of private premises on which such a pond is allowed to exist, or for the argument based upon the *meum* and *tuem* view of property rights, lying so pronouncedly at the base of the decisions in favor of such private owner, we hold that a city can not, under the circumstances here appearing, stand acquitted as having had due regard for the protection of the child life within its borders; and this regard the law, in its increasing humanity, should be solicitous to enforce."

In *Ansell v. Philadelphia*, 276 Pa. 370 (120 Atl. 277), the court, in a very brief decision, reached a conclusion opposite to that of the Tennessee court. In that case a child, 14 years of age, "was drowned by falling into a pond of water formed by the filling from springs and other sources of an abandoned quarry on land of the city taken for park purposes". A two-rail fence separated the water from an adjacent roadway. The boy crossed the fence and, while playing near the water, fell in and was drowned. Although the pond

was upon publicly owned property "taken for park purposes", the court, in determining the rights of the parties, made no mention of that fact except in the above-quoted words. It deemed the boy a trespasser from the moment he made his way through the fence. Apparently, children had never before resorted to this spot for play. The court evidently believed that the only legal principle which could warrant relief was the attractive nuisance doctrine, but held that it was not available because the invitation feature of that doctrine "depends on the character of the thing in question, and a pond of water guarded from the roadway like the one under consideration can not properly be placed in the same category with dangerous machines, electrical appliances and similar things". It will be observed that in both the Tennessee and the Pennsylvania cases the child had to make his way through a fence in order to get to the water-filled quarry in which he lost his life. In each instance the water was upon publicly owned property. In the case before us no fence surrounded the quarry.

To these decisions there can readily be added many more, the facts of which, however, differ somewhat from those before us. In *Capp v. St. Louis*, supra, the facts were that a boy was drowned in a deep pool excavated in the bed of a stream by the waters of a large storm sewer which terminated at that point. The stream and pool were in a city park where children played. Apparently, this boy, while wading in the stream, inadvertently stepped into the pool and thus got beyond his depth. A judgment against the city was affirmed, the court holding that the city, with its knowledge that children frequented this place, had failed to render it reasonably safe. In *City of Altus v.*

*Millikin*, 98 Okla. 1 (223 P. 851), a judgment for the plaintiff was sustained when it appeared that the 13-year-old son of the plaintiff was drowned when he inadvertently stepped into a deep hole excavated by the city in the bed of a pond in which he was wading. The pond had been formed by the city upon property which it owned while it was improving a street. The court quoted extensively from one of its earlier decisions which held that a property owner is required to make reasonably safe any obviously dangerous condition when he knows that children resort to that place as a playground. In *Davoren v. Kansas City*, 308 Mo. 513 (273 S. W. 401, 40 A. L. R. 473), the situation and result were similar to that in *City of Altus v. Milli-kin*, supra. See also the annotation accompanying this decision in the volume last cited. In fact, municipal liability has been recognized wherever the municipality permits a dangerous condition to develop upon any part of its property frequented by children, unless it provides proper safeguards. For instance, in *Glasgow v. Taylor*, 1 App. Cas. 44 (29 A. L. R. 846), the court held that the Corporation of Glasgow was liable for the death of a boy, 7 years of age, who died from eating the berries of a poisonous shrub growing in the public gardens of Glasgow. The shrub presented a tempting appearance. The evidence indicated that the municipality had failed to furnish adequate notice of the dangerous character of the shrub.

In the present instance, according to the complaint, the abandoned rock quarry "has precipitous, steep sides". Since the hole is filled with water, it is fair to assume that the danger arising from the steep sides and deep water is not readily discernible. Further, according to the complaint, "several other children

under similar circumstances'' have lost their lives by drowning in this pool. As already stated, the road which pursues the course dedicated for Plymouth street leads up to this pool, and the area around the latter has been used as a playground for years. Although the defendants were aware of all of the above, they made no effort to exclude the children by erecting a fence as was done by the city in the situation disclosed in *Ansell v. Philadelphia*, supra.

Obviously, this pool was a source of great danger to all children who played near it. Courts which hold that water-filled rock quarries on private property are not attractive nuisances, nevertheless, describe them as attractive and dangerous to children. See, for instance, *Stendal v. Boyd*, 73 Minn. 53 (75 N. W. 735, 42 L. R. A. 288, 72 Am. St. Rep. 597). The property containing this abandoned quarry was under the defendants' care and control. It was owned by the defendant municipality. No one but the latter was responsible for its condition. The defendants had been told of the dangers that lurked in this pool with its deep bottom and precipitous sides. They had been told that several children had lost their lives in this water. They were, therefore, aware of the fact that a dangerous condition was present upon property which it owned and upon which children customarily played. The defendants possessed ample authority to fill this abandoned quarry, to fence the property, to withdraw it from public use, or to do anything else necessary to prevent a repetition of the disasters which had occurred upon it. Under the averments of the complaint, it is permissible to infer that the children who came upon the property came, not as mere licensees, but in the exercise of their lawful rights.

▪ ■ The above being the facts presented by the complaint, we can not say that the defendants exercised due care in permitting this water-filled quarry to remain unguarded, and in allowing children, in the meantime, to come there for play. It was not the duty of the defendants to improve this place. They owed no duty to convert it into a street or a public playground; but it was their duty to exercise due care to render the place reasonably safe, or else exclude the children from it.

It follows that, in our opinion, the circuit court erred when it sustained the defendants' demurrer and entered judgment in their favor. The cause will be remanded.

KELLY and BELT, JJ., concur.

CAMPBELL, C. J., concurs in the result.