Argued at Pendleton October 25, 1937; affirmed February 8;
rehearing denied April 6, 1938

# BLUE *v.* CITY OF UNION

(75 P. (2d) 977)

8

In Banc.

*L. Z. Terrall*, of Union, and *Blaine Hallock*, of Baker (Hallock, Donald & Banta, of Baker, on the brief), for appellant.

*E. M. Sabin*, of Union, and *Carl Helm*, of La Grande, for respondent.

LUSK, J. The principal question for decision in this case, raised by motion for nonsuit at the trial, is upon

the construction to be given to the language of a statute of this state, governing suits and actions against cities and other public corporations. The statute is § 5-502, Oregon Code 1930.

The plaintiff recovered a judgment against the city of Union for injuries sustained by him on September 24, 1936, as the result of the neglignce of the city in failing to keep one of its streets in a reasonably safe condition for ordinary travel. He was injured, according to his claim, when the horse which he was riding fell into an unguarded hole in a wooden culvert in one of the city streets. The city contends on this appeal, as it did in the circuit court, that whatever may have been its liability formerly in such a case, today, under the statute as it now reads, it is immune to a private action for an injury caused by a mere omission of duty on its part as contrasted with a private action for an injury caused by its positive affirmative action. Its position rests upon the ground that, whereas, before the year 1929, the statute in question provided that an action could be maintained against certain public corporations, including cities, "for an injury to the rights of the plaintiff, arising from some act or *omission*" of such public corporations, it now provides that an action can be maintained only for an injury "arising from some act or *commission*" of such public corporations; and that the substitution of the word "commission" for "omission" amounts to a legislative abolishment of actions based upon a mere neglect to perform a duty such as constitutes the *gravamen* of the plaintiff's claim in the instant case.

The importance of the question and the far-reaching effects of its decision have caused us to give the case the most careful consideration.

The statute under consideration takes its origin from territorial days. As amended in 1862, and before this court was called upon to construe it, it read as follows:

"An action may be maintained against a county, or other of the public corporations mentioned or described in § 346, either upon a contract made by such county or other public corporation in its corporate character and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation." General Laws of Oregon, 1843–1872, as compiled and annotated by Matthew P. Deady and Lafayette Lane.

In 1887, the statute was amended so as to limit actions against counties to those on contract, and as so amended it read:

"An action may be maintained against any of the organized counties of this state upon a contract made by such county in its corporate character, and within the scope of its authority, and not otherwise. And an action may be maintained against any of the other public corporations in this state mentioned in § 346, in its corporate character and within the scope of its authority or for an injury to the rights of the plaintiff arising from some act or omission of such other public corporation." L. 1887, p. 45, Hill's Ann. Laws. § 350.

The public corporations mentioned in § 346 are, besides counties, incorporated towns, school districts, or other public corporations of like character.

The statute so remained until 1929, when the word "commission" in its latter part was substituted for "omission". It now reads:

"A *suit or* action may be maintained against any of the organized counties of this state *and against the state of Oregon by and through and in the name of its state highway commission* upon a contract made by

such county in its corporate character, *or made by such commission after the passage of this act and its approval by the governor* and within the scope of its authority, and not otherwise, and an action *or suit* may be maintained against any of the other public corporations in this state mentioned in § 5-501 (Oregon Code) in its corporate character, and within the scope of its authority or for an injury to the rights of the plaintiff arising from some act or *commission* of such other public corporation * * *." L. 1929, Ch. 227, § 5-502, Oregon Code 1930.

The italics indicate the changes made by the amendment.

██ In view of the decisions of this court construing the section after the amendment of 1887, the reason for the enactment of the law, at least as far as the liability of municipal corporations proper, such as cities, are concerned, must be a matter of speculation. For this court has many times declared, and today it is not open to question, that this statute does not include within its purview an injury arising from some public or governmental act of a public corporation, but only gives a remedy when the corporation is liable in its corporate capacity as distinguished from its political or governmental capacity, as an arm of the state. See *Antin v. Union High School District No. 2*, 130 Or. 461, 465 (280 P. 664, 66 A. L. R. 1271), and cases there cited. Now, no matter how great nor how numerous may be the difficulties in distinguishing between these capacities, it is established law that when a corporation exercises a purely corporate and proprietary or private function, such for example, as the maintenance and operation of a municipal wharf or airport or public utility, or water system, from which it derives a revenue, it is subject to suit without statutory authority, the same as any individual similarly en-

gaged: *Hise v. City of North Bend,* 138 Or. 150, 158 (6 P. (2d) 30); *Mollencop v. City of Salem,* 139 Or. 137 (8 P. (2d) 783, 83 A. L. R. 315); *Stephens v. City of Eugene,* 90 Or. 167, 171 (175 P. 855); *Coleman v. City of La Grande,* 73 Or. 521 (144 P. 468); *Umphlette v. City of Silverton,* 154 Or. 156, 163 (59 P. (2d) 244); 6 McQuillin, Mun. Corp. (2d Ed.) 1173, § 2844.

Thus, it may safely be said that, at least with respect to activities of the character mentioned, the statute neither created a liability on the part of the municipal corporation nor gave any remedy which did not already exist and which did not continue to exist independently of statute.

■ As far as quasi corporations, such as counties and school districts, are concerned, the reason for legislative action is apparent, because such organizations, the courts have held quite uniformly, are not liable in a civil action for damages for neglect of duty unless such liability be expressly made so by statute: *Rankin v. Buckman,* 9 Or. 253, 256. They are to be regarded, as Mr. Chief Justice Lord said in that case, "as public or state agencies, and not liable to be sued civilly, unless, as before stated, the action be expressly given by statute." See *Russell v. Men of Devon,* 2 T. R. 667, 100 E. R. 359; *Templeton v. Linn County,* 22 Or. 313 (29 P. 795, 15 L. R. A. 730); *Leesi v. Yamhill County,* 136 Or. 295, 299 (298 P. 911), and the cases there cited, and 6 McQuillin, Mun. Corp. (2d Ed.) 1018, § 2775. It is therefore easy to understand why the legislature, if it deemed it a wise public policy to subject quasi municipal corporations to liability for their torts, should have authorized the maintenance of such actions.

■■ But with regard to liability of cities to an action for injury caused by their failure to keep their streets

in repair, the case again is different. It is familiar law that municipal corporations act in a dual capacity and their functions are two-fold: the one, political or governmental; the other, private, proprietary, or corporate; that when they act in the former capacity they are not liable for the acts and omissions of their officers, agents, and servants; but when they act in the latter capacity, they are so liable: *Etter v. City of Eugene,* 157 Or. 68 (69 P. (2d) 1061), and cases there cited. The duty of keeping highways in repair has been said by this court to be a peculiarly municipal duty: *Farquar v. City of Roseburg,* 18 Or. 271 (22 P. 1103, 17 Am. St. Rep. 732). It has also been said to be a governmental duty (*Platt v. City of Newberg,* 104 Or. 148, 156 (205 P. 296); *Humphry v. City of Portland,* 79 Or. 430, 444 (154 P. 897)), yet in a long line of cases, beginning with *O'Harra v. City of Portland,* 3 Or. 525, and ending with *Large v. City of St. Helens,* 140 Or. 564 (14 P. (2d) 628), the liability of cities for failure properly to perform that duty has been repeatedly affirmed, and never denied except in those instances where the city has been exempted by a valid provision in its charter. For the purposes of this case it is not necessary, nor would it be useful, to investigate the varying theories which have been advanced by this and other courts in support of that doctrine, nor to attempt to reconcile conflicting views to which judicial expression has been given. It is enough to say that the doctrine is firmly established in the law of this state, and that its recognized basis today is that set forth in *Batdorff v. Oregon City,* 53 Or. 402, 405 (100 P. 937, 18 Ann. Cas. 287), in the following language:

"Though there is a conflict of judicial utterance as to the common-law liability of a city for a failure to keep a street in repair, the weight of authority sup-

ports the principle that when a charter invests a municipal corporation with exclusive control over the streets within its limits, and authorizes it to employ the means necessary to improve and maintain such highways, a duty to the public arises by implication of law to keep the streets that have been opened for travel in a reasonably safe condition; and for any injury that may result from a failure to discharge such obligation the city, without any statutory provision to that effect, must respond in damages. [Citing authorities]. Our statute re-enacts this rule of the common law, and authorizes the maintenance of an action against any city in its corporate capacity for an injury to the rights of a party arising from some act or omission of a municipality. § 360, B. & C. Comp. Wagner v. Portland, 40 Or. 389 (60 P. 985 : 67 P. 300). In order to avoid the effect of such enactment and to escape the common-law liability which is usually implied from the neglect of officers properly to discharge a duty devolving upon a city, charters have been granted which attempted to exonerate such municipalities from accountability for personal injuries resulting from a failure to keep an opened highway in a suitable condition for travel. Sheridan v. Salem, 14 Or. 328 (12 P. 925)."

Now, while the statute under consideration has been invoked by this court when passing on the question of a city's liability on account of defective streets, just as it has been held to apply in those cases where strictly corporate capacities and functions were involved, yet, as tending to fortify the conclusion stated in *Batdorff v. Oregon City,* supra, and also later in *Humphry v. City of Portland,* supra, that the former is a common law liability, it is significant that there are numerous cases in which this court has sustained the right to maintain actions against cities for injuries caused by their failure to keep their streets in a suitable condition of repair and in which the statute has not been

mentioned, nor in any way looked to as the foundation of the right. See *Mattson v. City of Astoria,* 39 Or. 577 (65 P. 1066, 87 Am. St. Rep. 687); *Farquar v. Roseburg,* supra; *Pullen v. City of Eugene,* 77 Or. 320 (146 P. 322, Ann. Cas. 1917D, 933); *Caviness v. City of Vale,* 86 Or. 554 (169 P. 95); *Colby v. City of Portland,* 85 Or. 359 (166 P. 537); *Platt v. Newberg,* supra; *Mathews v. City of La Grande,* 136 Or. 426 (299 P. 999). And so Oregon has been classed, and we think rightly, by Mr. McQuillin as one of the many states of the Union which hold to the common-law rule of liability in this regard: 7 McQuillin, Mun. Corp. (2d Ed.) p. 5, § 2900.

Speaking of this doctrine, Judge Dillon says that it "has seemed so reasonable that it is believed never to have been legislatively repudiated, and it is certain that it has been almost universally adopted. It has, in fact, become as above shown, part of the settled jurisprudence of the country.": 4 Dillon, Mun. Corp. (5th Ed.) 3009, § 1715.

 The amendatory statute must be construed in the light of the law relating to the liability of municipal corporations for their torts as it has been expounded and declared by this court. Some phases of this law are in a confused state in this as in other jurisdictions, and it is impossible to reconcile some decisions with others; but the following propositions, we think, are established by the course of judicial decision in this state: First, that without a statute authorizing it, no action will lie against a quasi municipal corporation for the negligent acts of its officers, agents, or employees; second, that municipal corporations proper are liable at common law to a private action for such negligent acts when they are incident to the performance of some private, corporate, or proprietary func-

tion; third, that municipal corporations proper, such as cities, are so liable at common law to a private action for injuries caused by their failure to perform the duty imposed on them of keeping the streets and other public ways in a reasonably safe condition for the ordinary modes of travel when they are authorized to employ the means necessary to improve and maintain such highways; and, fourth, that the statute under consideration has no application to a case where the corporation is exercising political or governmental functions as an agency of the state, but does apply to the acts of the city in its corporate capacity, including the municipal or ministerial duty of repairing its streets.

In view of these principles, the court should not, as counsel for the defendant urge us to do, construe the amendatory statute strictly. We are referred to such decisions as *McFerren v. Umatilla County*, 27 Or. 311 (40 P. 1013); *Jones v. Union County*, 63 Or. 566 (127 P. 781, 42 L. R. A. (N. S.) 1035); and *Rapp v. Multnomah County*, 77 Or. 607 (152 P. 243), where it is said that statutes creating a liability where none would otherwise exist are to be strictly construed. These cases deal with counties, which, as we have seen, are not liable to private actions for negligence in the absence of a statute imposing such liability. The rule of construction by which we are to be guided here is that stated in *Mayor and Aldermen of Birmingham v. Starr*, 112 Ala. 98, 105 (20 S. 424):

"It is conceded, and it has become the settled law now, wherever a city or town is required, or power is conferred, by its charter, to repair and keep in good condition its streets and sidewalks, the duty arises, and the city is liable to any one sustaining damages by a failure to perform the duty, unless the city is exempted from responsibility, and we think it may be safely added, that liability should be clearly negatived, or the

exemption clearly stated.—2 Dillon, Mun. Corp. §§ 1017, 1018, 1023, and authorities cited to the text.''

In our search for the intention of the legislature, it must be remembered that the statute is not confined in its operation to actions for injuries caused by negligence in connection with the city's duty to maintain and repair its streets. As we have seen, it relates to any of the strictly corporate activities of the municipality. The consequence of adopting the construction urged upon us by the city would be not merely the exemption of cities from liability in this and similar cases but in all those other cases where they act in a strictly private and proprietary capacity, so that hereafter cities will be immune to private actions for negligent omissions of duty in the maintenance and operation of municipal gas, water, and lighting systems, docks, street railways, and the like. Grave questions would arise as to the liability of cities to their employees under the employer's liability act. See *Asher v. City of Portland*, 133 Or. 41 (284 P. 586). These are consequences somewhat startling to contemplate and a construction of the statute which would lead to them ought not to be adopted, unless we are driven to it by language so clear that no doubt could remain.

As far as school districts and other quasi municipal corporations are concerned, a different question would be presented, in view of their immunity to private action in the absence of statute authorizing such actions.

■ We hold that the legislature has not, by the substitution of the word ''commissions'' for ''omissions'' in the statute, clearly manifested an intention to deprive the individual of the right, always heretofore recognized in this state, to maintain an action against a city for injury caused by the city's negligent failure

of duty in regard to the maintenance and repair of its streets; but rather that the effect of the amendment is simply to leave the subject as it was at common law. That would certainly have been the result if all reference to cities had been eliminated from the statute. It would have been concluded that the legislature was merely getting rid of a superfluous and unnecessary law. We think that had the legislature intended any such revolutionary change in the law of municipal corporations as the defendant here claims, they would have said so in plain language, or, at any rate, that they have not so clearly expressed such intention as to warrant us in placing that construction upon the language of the amendatory act.

This conclusion is supported to some extent by *Umphlette v. City of Silverton*, supra; *Wheeler v. City of St. Helens*, 153 Or. 610 (58 P. (2d) 501; and *Mathews v. City of La Grande*, supra, cases based on injuries caused by defective streets or sidewalks, which were sustained after the 1929 amendment, although the question of the construction of the statute was not presented to the court in those cases.

It also finds support in the decision in *Grant County v. Lake County*, 17 Or. 453 (21 P. 447). This case arose after the amendment of 1887, which provided, as we have seen, that an action might be maintained against any of the organized counties of this state, upon a contract made by such county, *and not otherwise*. By legislative act a portion of territory was taken from Grant county and annexed to Lake county, and the latter was required to pay the former a certain portion of the indebtedness of Grant county to compensate it for its consequent loss of revenue through taxation. The action was to recover the amount of this indebtedness. The defendant contended that the statute expressly

inhibited the maintenance of the action, but the court held otherwise, pointing to the fact that another provision of the code authorized counties to sue and to be sued. "Hence", it was said, "if § 350, as amended, or the original § 347 as it stood prior to the amendment, had never been adopted, an action could have been maintained by or against a county for any cause affecting its rights or duties as such corporate body." The city of Union is authorized "to sue and to be sued, to plead and to be impleaded", and the doctrine of this case is not without its application here.

Furthermore, whereas, prior to the amendment of 1887, the right to maintain an action on a contract against a city was expressly given by the statute, by that amendment such right was, in terms, eliminated. If the contention of the city in this case were to be carried to its logical conclusion, it would follow that no action on contract could be maintained against any of the cities of this state—a position which we assume no one would have the hardihood to take.

■ The city of Union is empowered by its charter to open, improve, and construct streets, side and cross walks, and public ways, and to establish and alter the grades of any streets. It is also by that instrument authorized to employ the means necessary to discharge those duties. It is, therefore, under the doctrine of this court, which we have set forth, liable to an action of this character and no error was committed by the circuit court in denying the motion for a nonsuit.

■ The defendant further contends that it was entitled to a judgment of involuntary nonsuit because the plaintiff, under the evidence, was guilty of contributory negligence as a matter of law. No such ground was specified in the motion addressed to the circuit court. The rule is well settled that when a motion for nonsuit

is denied the grounds stated in the motion are conclusive on the moving party, and he cannot raise, for the first time on appeal, a ground not stated in the court below: *Hunt v. Ring*, 125 Or. 111, 114 (265 P. 1094). The question of contributory negligence is not before us.

 The defendant's brief contains an assignment of error, reading as follows: ·

"The trial court improperly excluded evidence of plaintiff's habits of riding rapidly and carelessly about the streets of Union and of evidence of the manner in which a horse would have stumbled to be found in the position disclosed by plaintiff's witness, Sherman."

This assignment, like several others in the brief, does not comply with rule ten of the Rules of the Supreme Court, 154 Or. 690. It does not set forth any question, objection, or ruling of the trial court, nor does it refer us to any page of the transcript where the rulings complained of are to be found. We would, therefore, be justified in ignoring the assignment altogether. Nevertheless, we have searched the record for the alleged errors and are of the opinion that none were committed. Evidence of the plaintiff's conduct on other occasions was not admissible to prove that he was negligent at the time and place of the accident: *Peters v. Consolidated Freight Lines*, 157 Or. 605 (73 P. (2d) 713; *Dermody v. Fanning*, 153 Or. 392 (56 P. (2d) 1150).

 If either party had the right to complain of the trial court's rulings on the admission of expert or opinion evidence as to the manner in which a horse would fall under certain circumstances, it was the plaintiff, not the defendant. As we have said, the plaintiff claimed that the horse which he was riding fell into an unguarded hole in a wooden culvert in the city street. Over the plaintiff's objection, a great deal of testimony

was admitted, designed to show that if the horse had stepped into the hole he would not have fallen in the manner that some of the testimony indicated that he did fall. One witness testified that, "A horse is like a human or any other animal, if they fall down while going at a good rate of speed, they will naturally go in the same direction"—a statement which indicates that the opinions elicited were concerning facts of common knowledge and not the subject of expert testimony. However that may be, the opinions of a number of witnesses versed in the habits and idiosyncrasies of falling horses were received, but when it was sought to have these witnesses, who did not see the accident, advise the jury as to how it probably occurred, the judge called a halt upon this proposed invasion of the province of the jury. In this he was so obviously right that the question is not even debatable.

■■ The only other assignment of error which calls for discussion relates to the action of the trial court in excluding from the evidence exhibits 1 and 2, consisting of a letter written by one of the attorneys for the plaintiff to the city recorder of the city of Union, under date of December 15, 1936, and a statement of the plaintiff's claims inclosed therewith. The letter reads as follows:

"As attorney for Mr. A. J. Blue I am filing with you his claim against the city of Union for damages resulting from injuries sustained by him when his horse fell through a hole in a culvert or bridge. I ask that you file the claim with the City council and call the same to its attention. If the City settles and pays the amount claimed it will be accepted. If not the claim as presented shall not be considered as binding on Mr. Blue as to the amount of damages he actually suffered. As regards the claim of $42.00 owing by Blue to Dr. Lee and the claim of $5.84 for medicines I agree that the

city may pay the same at once without prejudice as to any defense the city may think or be advised it has to the claim of Mr. Blue, nor will the payment of the same at this time be construed as a liability on the part of the City. Both of said parties have waited for some time for their pay and I think should be paid now, and for that reason I make the above statement. This is merely my own personal view of the matter and suggested because I think it reasonable.''

The accompanying claim reads:

''Union, Oregon, December 15, 1936 The City of Union to A. J. Blue Dr. To injuries sustained as a result of being thrown from his horse when the horse fell through a defective bridge or culvert on one of the streets within the corporate limits of the

| | |
|---|---:|
| City of Union, on September 24, 1936 | $800.00 |
| To suffering resulting from said injuries | 500.00 |
| Loss of time | 225.00 |
| Medical service by Dr. Geo. F. Lee | 42.00 |
| Medicines at Union Drug Company | 5.84 |
| Total | $1572.84'' |

The question is whether these documents constitute an offer of compromise. The defendant argues that they are to be treated as an admission of the extent of plaintiff's damages; that the plaintiff has merely stated the amount of his minimum demand with a threat to sue for more, if that amount should not be paid, and that, therefore, the rule which renders offers of compromise inadmissible has no application. It is argued that, as the plaintiff sued for more than $12,000, and recovered a judgment for $5,297.84, the exclusion of the writings, which show a previous appraisal by him of his damages at a much smaller sum, was prejudicial error.

In *Dalk v. Lachmund,* 157. Or. 152 (70 P. (2d) 558), there is an illuminating discussion of this subject by Mr. Justice ROSSMAN, from which we quote:

"As is seen from the definitions of the word 'compromise', one of its elements is a concession. The concession is prompted by a desire for peace and avoidance of litigation. Influenced by such promptings, the party may forego rights which he could readily establish in litigation, but he surrenders them for the sake of peace. Thus, since an offer of compromise may involve the surrender or waiver of rights rather than an insistence upon them, it is unlikely to be a reliable source of admissions. Due to this circumstance, as well as to a desire to encourage compromises, the law regards offers of compromise as privileged communications, and renders them inadmissible."

■ Whether an offer to accept a named sum in payment of a claim is an admission that that sum is the extent of one's damage, or an offer to buy one's peace, or to compromise for the purpose of averting litigation, is primarily a question of fact to be determined by the trial court. It is a question of intention: *Langdon v. Ahrends,* 166 Iowa 636, 639 (147 N. W. 940); *Donley v. Bailey,* 48 Col. 373 (110 P. 65).

■ One of the tests, as we have seen, in resolving this question is whether the claimant is offering to take less than his due: *Swenson v. Kleinschmidt,* 10 Mont. 473 (26 P. 198). We think that upon a fair construction of the entire letter and the claim which accompanied it, no error was committed in excluding the proffered evidence. When plaintiff's attorney wrote, "If the city settles and pays the amount claimed, it will be accepted. If not, the claim as presented shall not be considered as binding on Mr. Blue as to the amount of damages he actually suffered", he virtually informed the city that the plaintiff had been damaged in a greater

sum than that which he was willing to accept in order to avoid litigation. The intention was to submit an offer of compromise.

Section 7-202, Oregon Code, provides:

"An offer of compromise is not an admission that anything is due; but admissions of particular facts, made in negotiation for compromise, may be proved unless otherwise especially agreed at the time."

The items in the claim of $42 for medical services furnished by Dr. Lee, and of $5.84 for medicine, taken in connection with the statements in the letter regarding these items, must be deemed admissions of particular facts, but as admissions their exclusion from evidence was wholly immaterial, because in the trial of the case the plaintiff claimed no larger sums for medical services and medicine.

We find no error in the record and it results that the judgment must be affirmed.

ROSSMAN and KELLY, JJ., not sitting.

---

RAND, J. (dissenting). Unless prohibited by some provision of the federal or state constitution, it is within the power of the legislature to provide that a city shall or shall not be liable for its failure to perform a municipal duty. It cannot, of course, destroy vested rights which would be a taking of property without compensation, nor can it impair the obligation of contracts. These are prohibited both by the federal and state constitutions. But no person has a vested right to a remedy for an injury which may or may not happen in the future because of some future tort. The law creating or excluding liability for torts, which may or may not arise in the future, is subject to change by the legis-

lature. See the prevailing opinion by Mr. Justice
Strahan in *Templeton v. Linn County*, 22 Or. 313,
319 (29 P. 795, 15 L. R. A. 730). In my opinion, this
change was made by the 1929 amendment of section
5-502, Oregon Code 1930, when it substituted for the
word "omission" the word "commission", which was
some six or seven years before the accident complained
of happened. Prior to that time, the statute of this
state, as well as the former territorial statute, pro-
vided that for the acts or omissions of its officers,
agents and employees a city was liable if injury resulted
therefrom to a third party.

Now, the change in the statute by substituting the
word "commission" for "omission" was evidently for
some purpose or else it was a clerical error upon the
part of the legislature. Whether it was wise to make
such change was a question for the legislature, not the
courts, and, if it was a clerical error, then, unless there
is some ambiguity or absurdity in the amendatory act,
this court would not be warranted to give to the amend-
atory act any different meaning from what its language
imports. The power of courts to correct clerical errors
in a statute can be exercised only when the error is so
manifest from an inspection of the act as to preclude
all manner of doubt and when the correction will re-
lieve the sense of the statute from an actual absurdity
and carry out the clear purpose of the legislature:
Black, Interp. of Laws (2d Ed.), sec. 58; Endlich,
Interp. of Stat., sec. 407.

It is a familiar rule, which has often been laid down
by this court, that, where words in a statute are sus-
ceptible of two constructions, of which one will lead to
an absurdity, the other not, the latter is to be adopted.
To hold, therefore, that, when the legislature, by the
amendatory act, substituted the word "commission"

for "omission", it intended to make no change in the statute and that cities should thereafter, as formerly, be liable for their omissions would defeat the very purpose which the legislature had in mind in amending the former statute since the words "omission" and "commission" mean two entirely different things and presumably were used by the legislature with the intention that they should be given their popular signification and not be used interchangeably as if meaning one and the same thing. To give to the amended statute that construction would lead to an absurdity.

Hence, whether the remedy of an injured person to sue a city for a failure to keep its streets in repair was a common-law remedy, as some of our decisions have held, or was a remedy created by statute, in either event, the legislature had power to limit or modify the liability of a city in whatever manner it saw fit to do. As so amended, the statute is controlling and should be given its proper effect.

For these reasons, I cannot concur in the majority opinion.