Argued May 1, affirmed June 17, 1964

# FENTON *v.* ALESHIRE ET AL

393 P. 2d 217

*Carrell F. Bradley,* Hillsboro, argued the cause and filed briefs for appellants.

*Sol Siegel* and *Dwight L. Schwab,* Portland, argued the cause for respondent. On the brief were Goldsmith, Siegel & Goldsmith, and Hutchison, Schwab & Burdick.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

LUSK, J.

On October 27, 1961, Claudia Fenton, a girl eight years of age, was struck by an automobile driven by the defendant, Ronald L. Aleshire, and owned by the

defendant William A. Sabel. She sustained injuries which resulted in her death. In an action brought by the administrator of the young girl's estate to recover damages for wrongful death, the jury returned a verdict for the defendants. Thereafter the court, on motion of the plaintiff, entered an order setting aside the verdict and granting a new trial. This appeal is from that order.

The accident occurred a short time after five o'clock in the afternoon; it was raining hard, it was dark, and visibility was poor. Automobiles were being driven with their lights on. The defendant was driving in an easterly direction on Southwest Parkway in a suburb of Portland. Southwest Parkway is intersected in irregular fashion by Southwest Tremont on the north, and Southwest Edgewood on the south. At the southeast corner of this intersection are the building and playground of a public school. On the Southwest Parkway side the playground is elevated a few feet above the level of the street.

The defendant Aleshire, according to his testimony, was driving at a speed of fifteen to twenty miles per hour, and had passed through this intersection when he saw the decedent, apparently coming from the playground, about four feet from the right side of his car. Aleshire testified:

"Well, I saw her running off the bank and just like that she was in front of me, and I turned away to the right, trying to miss her, and I hit the brakes at the same time; when the car hit her, she spun off to the left."

Aleshire further testified that the little girl was looking towards the east as she ran, that is, in the direction away from his car, and that she was struck by the left front headlight of the car.

The court assigned the following grounds for its order granting a new trial:

"1. The court erred in instructing the jury on unavoidable accidents.

"2. The court erred in instructing the jury on sudden emergency.

"3. The court erred in allowing defense counsel to argue statements of law to the jury which in the court's opinion were not applicable and could well have been misleading.

"4. The court erred in instructing the jury on negligence *per se* without limiting such instruction to the defendants."

We will consider first the third ground, improper argument to the jury. The italicized language in the following portion of the closing argument of counsel for the defendants is the basis of the ruling:

"* * * Mr. Schwab [counsel for the plaintiff] and I, we are again on a point of agreement, I agree with him that it is the law that in the event you should not accept our theory of the case, that damages would be for the net value of her estate at the time of her death, I mean, assuming that she lived out her life expectancy, *there can be no compensation for counsel* [sic] *to console the parents or for their grief or any pain or any suffering of the deceased, and there's a reason for that rule and one reason being that the parents are given by statute another lawsuit, that they may bring the lawsuit for the loss of services of the child, and so, out of an accident where there's some fault, there can be in fact usually two lawsuits, one brought by the estate for pecuniary loss, assuming she had lived, and the other, the loss of services by the parents.* Now, I don't know who is to say what we are to assume by a child that's eight years old, and assume what they would have saved had they lived another 60 years. People be-

come ill, they have a fatal accident, they get married and never work, and never save, others are very frugal, they don't get married and they do save and they work very hard and they pay it out all in taxes, clothes, and so to me it is the worst kind of an assumption and one that I will not indulge in, and I feel if the matter gets to that point, and I hope it doesn't, but if it does, that your assumptions surely will be as valid as any that I could make or any that Mr. Schwab could make."

Before the final arguments, counsel for defendants had informed the court that he intended to argue the italicized matter to the jury. Counsel for plaintiff objected and the court, without deciding the question, warned counsel for the defendants that it might constitute error, and allowed the plaintiff, in advance, an exception to such argument, if it should be made, so as to avoid the necessity of an interruption during the argument.

■ We agree with the court below that permitting the argument was error. Whether the parents of the deceased child had a cause of action for loss of services was wholly irrelevant to the issues for the determination of the jury: negligence of the defendant; contributory negligence of the deceased; proximate cause and damages.

That the statement was prejudicial we have no doubt. Made, as it was, in connection with counsel's argument as to the speculative nature of the claim for damages in a death case involving the death of an eight year old child, its natural tendency was to plant in the jury's mind the idea that they should allow no damages because the parents might recover in a different lawsuit brought for the loss of their child's services. We do not impute to counsel for the defend-

ants a bad motive, but the best intentions could not neutralize the harmful effect of what he said. An argument of this kind can be just as prejudicial to a plaintiff as the wrongful injection of insurance into the trial can be to a defendant.

*Hubbard v. Lamford Lbr. Co., Inc.,* 209 Or 145, 150-151, 304 P2d 943, relied on by the defendants is not controlling. There we affirmed the ruling of the trial court which sustained an objection to an improper argument to the jury on damages by counsel for the plaintiff and observed that in any event the ruling was not reversible because the verdict was for the defendant. Whatever may have been the propriety of the dictum in the context of that case, here we are dealing with an improper argument which, for all we know, may well have influenced the jury to find that, regardless of the questions of negligence and contributory negligence, no damages under the rule peculiar to such cases as this had been established by the evidence.

■ The defendants suggest that the point was waived by failure of the plaintiff to object at the time the argument was made. It is true that in *Nielsen v. Brown,* 232 Or 426, 430, 374 P2d 896, we indicated that the trial judge is not required to rule on a hypothetical state of affairs. But this is an appeal from an order granting a new trial for prejudicial error. In such a case it is immaterial on review whether a proper objection or any objection was made, *Strandholm v. General Const. Co.,* 235 Or 145, 152, 382 P2d 843.

■ The court did not err in instructing the jury on sudden emergency. The emergency doctrine, as applied in automobile accident cases, was thus stated

by Mr. Justice BRAND in *Frangos v. Edmunds,* 179 Or 577, 607, 173 P2d 596:

"* * * When a driver finds himself confronted by an emergency constituting an imminent and impending danger and alternative means of escape from collision are presented so that it becomes a matter of judgment as to what course to follow, he will not be liable for a mistake in judgment if he acted with such care and prudence as a reasonable person would exercise in such an emergency. This is true even though the choice he makes is not such as a reasonable person with ample opportunity for deliberation would make. The rule is always subject to the limitation that a person cannot avail himself of the emergency doctrine if the emergency arose by reason of his own negligence. A review of our decisions will disclose that the emergency doctrine ordinarily applies only when the evidence discloses that alternative action is possible and that quick judgment is required (citations omitted)."

According to the defendant Aleshire's testimony, he was confronted with an emergency not brought about by his own negligence when the little girl ran suddenly in front of his car. He applied his brakes and turned to the right. The only element of the rule which arguably is lacking is a choice of alternative courses. We think, however, that it might be properly contended that Aleshire could have avoided the accident by turning to the left instead of to the right and that, therefore, the instruction was applicable. See *Raz v. Mills,* 231 Or 220, 227, 372 P2d 955.

The court gave the jury the following instruction:

"Now, the law recognizes that some accidents are unavoidable. An accident may happen and a party may be injured without negligence on the part of any of the parties. If any accident occurs

which is unavoidable as far as the parties are concerned, and one in which none of the parties were negligent, then the injured party cannot recover as no negligence has been proved. An unavoidable accident is a happening to which human fault does not contribute; therefore, the defendant may not maintain the defense of unavoidable accident if the failure to use ordinary care has contributed, no matter how slightly, as a proximate cause of the occurrence. * * *"

■ We have re-examined the question and have reached the conclusion that the instruction on unavoidable accident should not be given in any case.

"Unavoidable accident" has been defined by this court as an accident which occurred without the negligence of anyone, *Murphy v. Read,* 157 Or 487, 491, 72 P2d 935.

■ It is not an affirmative defense and need not be pleaded, *Slotte v. Gustin,* 224 Or 426, 429, 356 P2d 435; *Baty et al v. Macken et ux,* 206 Or 285, 291, 292 P2d 489; *Valdin v. Holteen and Nordstrom,* 199 Or 134, 159, 260 P2d 504; *Igo et al v. Butler et al,* 199 Or 423, 429, 262 P2d 675; *Denton v. Arnstein,* 197 Or 28, 48, 250 P2d 407; *Frangos v. Edmunds,* supra, 179 Or at 611; *DeWitt v. Sandy Market, Inc.,* 167 Or 226, 240, 115 P2d 184 (a plea that the accident was "unavoidable in as far as defendant was concerned" is "merely an argumentative denial of the charge that the defendant was negligent").

In several cases refusal to give the instruction has been held not reversible error, *Igo v. Butler,* supra (defendant's "plea of unavoidable accident adds nothing whatever to the denial of negligence on his part"); *Holzhauser v. Portland Traction,* 178 Or 607, 612, 169 P2d 127; *McVay v. Byars,* 171 Or 449, 138 P2d 210;

*Murphy v. Read,* supra; *Kitchel v. Gallagher,* 126 Or 373, 383, 270 P 488 (the instruction that "plaintiff must prove defendant negligent before plaintiff could recover, sufficiently covered the point"; approved *Frangos v. Edmunds,* supra, 179 Or at 611). In *McVay v. Byars* we said that an instruction putting the question whether " 'the accident was unavoidable so far as the defendant was concerned', is merely a more involved and clumsier manner of saying that * * * [the jury] should find for defendant if they should determine that he had not been negligent in any respect as alleged"; and in the *Holzhauser* case we said: "Neither the giving nor the failure to give an instruction similar to the one here assailed would constitute reversible error under the holdings of this court."

Where, however, it appeared that the defendant was guilty of negligence as a matter of law, giving the instruction was held prejudicial error: *Ordeman v. Watkins,* 114 Or 581, 585, 236 P 483; *Nettleton v. James et al,* 212 Or 375, 319 P2d 879. And in *Snabel v. Barber et al,* 137 Or 88, 300 P 331, we held that the instruction was properly refused because, under the evidence, the jury might have found that defendant should have anticipated plaintiff's conduct.

In more recent cases we have said that the instruction should not be given in "the ordinary case," *Raz v. Mills,* 233 Or 452, 454, 378 P2d 959; that it should be given "with caution," *Locatelli v. Ramsey,* 223 Or 238, 243, 354 P2d 317; and have indicated that even in a proper case the giving or not giving of the instruction is discretionary with the court, *Raz v. Mills,* supra. In *Raz v. Mills* it was also said that a proper case was one in which there is evidence that a sudden emergency was caused by a third party, the emergency in-

volving no fault of the defendant—the situation then before the court. In harmony with this pronouncement is *Simpson v. The Gray Line Co.,* 226 Or 71, 79, 358 P2d 516, where the emergency arose when the tires of a bus blew out, as are also *Locatelli v. Ramsey* and *Baty v. Macken,* both supra, involving emergencies created by icy pavements.

Attempt to define or classify the cases in which the instruction is appropriate was also made in *Snabel v. Barber,* supra, in which, as heretofore stated, the instruction was disapproved. It was there said, obiter, that the instruction was proper in so-called "darting out" cases, illustrations of which were adduced. (We may observe, parenthetically, that *Snabel v. Barber* itself bore a close resemblance to a "darting out" case.) Nevertheless, since that decision the instruction has been given in "ordinary" cases and not found objectionable by this court, *Hanks v. Norby,* 152 Or 610, 54 P2d 836; *DeWitt v. Sandy Market, Inc.,* and *Slotte v. Gustin,* both supra.

Apparently, in only one case has refusal to give the instruction been held erroneous. This is *Meaney v. P. E. P. Co.,* 131 Or 140, 154, 282 P 113, which involved a collision between an automobile driven by the plaintiff and a logging car in a train operated by the defendant which had stopped across the county road. The defendant claimed that the car was caused to stop by circumstances over which it had no control. There was a judgment for the plaintiff which the court set aside; plaintiff appealed, and this court affirmed the order setting aside the verdict and granting a new trial on the ground, among others, that the court erred in refusing to give the following requested instruction:

"If you find from the evidence that the acci-

dent was unavoidable so far as the defendant was concerned, you will return your verdict in favor of the defendant company." 131 Or at 154.

While the foregoing review does not include all our cases where the question under consideration was involved, it should suffice for present purposes.

In the modern law of negligence the doctrine of "unavoidable accident," or, as it is sometimes called, "inevitable" or "pure" accident, is an anomaly. By definition—at least by the definition adopted by this court—it has no place as a separate and independent element in an action based on negligence. As pointed out by Paul G. Rees, Jr., of the Arizona Bar, in a scholarly article entitled "Unavoidable Accident—A Misunderstood Concept", "the Restatement of Torts does not treat unavoidable accident as an entity of the law," 5 Ariz Law Rev 225, footnote 11 at 228. No instruction on unavoidable accident is included in the Uniform Jury Instructions in negligence cases drafted by the Committee on Procedure and Practice of the Oregon State Bar, and approved by the judges of the Circuit Court for Multnomah County on February 21, 1963. As this court has repeatedly declared, an unavoidable accident is nothing more nor less than an accident which occurs without anyone's fault. In practical effect, when included in the charge of the court to the jury, it is lagniappé to the defendant—not only because it is an added "you-should-find-for-the-defendant" type of instruction, but because it may be misunderstood by the jury as constituting some sort of separate defense. By its very nature it has led this court—and we apprehend other courts—to regard the refusal to give the instruction as no ground for reversal, to attempt to delimit the type of cases to which

it is applicable, to declare that even in those cases it is discretionary with the trial judge and to admonish caution in the use of the instruction. What is to guide the discretion of the judge in a particular case is by no means clear. The clear implication of *Raz v. Mills* and *Snabel v. Barber* is that the instruction should be given only in cases of "sudden emergency." In such cases an instruction upon that subject is all that is needed fully to protect the rights of the defendant.

In 1958 the Supreme Court of California re-examined this subject and held, by a divided court, in an opinion by Chief Justice Gibson, that the instruction on unavoidable accident in a negligence case should not be given, thereby overruling a long line of California decisions, *Butigan v. Yellow Cab Company,* 49 Cal 2d 652, 320 P2d 500, 65 ALR2d 1, with Annotation at p 12. The court thus stated the reason for its ruling:

"In the modern negligence action the plaintiff must prove that the injury complained of was proximately caused by the defendant's negligence, and the defendant under a general denial may show any circumstance which militates against his negligence or its causal effect. The so-called defense of inevitable accident is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause of the injury. (Citations omitted.) The statement in the quoted instruction on 'unavoidable or inevitable accident' that these terms 'simply denote an accident that occurred without having been proximately caused by negligence' informs the jury that the question of unavoidability or inevitability of an accident arises only where the plaintiff fails to sustain his burden of proving that the defendant's negligence caused the accident. Since the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sus-

tain his burden of proof on these issues in order to recover, the instruction on unavoidable accident serves no useful purpose." 49 Cal 2d at 658-659.

This reasoning is in full accord with what this court has said in numerous decisions, and makes unavoidable the conclusion that instructions on unavoidable accidents in negligence cases are without value and may be prejudicial.

■ Counsel for plaintiff, in their brief, do not seek to support the fourth ground of the motion, namely, that the court erred in instructing on negligence per se without limiting such instruction to the defendants. The court gave the jury the customary definition of negligence per se and later applied it to the conduct of the defendant Aleshire, who was charged with violation of several provisions of the Oregon Motor Vehicle Act. There was no claim that the decedent violated any statute and we are of the opinion that the instruction complained of was not misleading.

■■ Defendants contend that in any event the order granting a new trial is erroneous because their motion for a directed verdict should have been allowed. We have examined the testimony and concluded that it presents a question for the jury. There were circumstances in evidence from which an inference might have been drawn of failure of the defendant Aleshire to keep a proper lookout. In view of another trial, however, it should be stated that we have given no consideration to evidence admitted over objection that it was the habit of the deceased to use the crosswalk on Southwest Parkway. The defendant Aleshire testified that the accident occurred a considerable distance east of the crosswalk. The great weight of authority in this country supports the rule that "* * * evidence of

the general habits of a person is not admissible for the purpose of showing the nature of his conduct upon a specific occasion. * * *" 38 Am Jur 1017, Negligence § 320; *Blue v. City of Union,* 159 Or 5, 20, 75 P2d 977. Numerous courts have made an exception to the rule when there are no eyewitnesses to an accident in which a person is killed; if there are eyewitnesses, such evidence is not admissible, 38 Am Jur 1018, Negligence § 321; Annotations 15 ALR 135, 138, 18 ALR 1109. The defendant Aleshire was an eyewitness to the accident in this case and the evidence was improperly admitted.

The order appealed from is affirmed and the cause remanded for further proceedings not inconsistent with this opinion.

ROSSMAN, J., dissenting in part and concurring in part.

I dissent from the part of the decision which withdraws from the trial judge's vocabulary, in instructing a jury, the term "unavoidable accident." When the layman upon the street uses that term, he fully understands its meaning. The decision obviously leaves all people, including lawyers, free to use the term "unavoidable accident." Only the trial judge is forbidden the use of the term.

Of all work which the legal profession performs, instructing the jury is very likely the poorest that we turn out. Denying the trial judge the right to use the words "unavoidable accident" will not improve the instructions. The majority suggests no term of equal clarity for the trial judge to use in lieu of "unavoidable accident." In fact, they suggest that when the trial judge has told the jury that the plaintiff is not entitled to a verdict unless he establishes negligence,

he need say nothing more. But the trial judge is in a far better position than we are to know whether he should say something more. If some trial judge in the future momentarily forgets the holding of the majority in this case and uses the term "unavoidable accident," a basis for appeal will be created or an additional assignment of error will find its way into the appellant's brief.

Apparently, the basis of the majority's opinion is that the term "unavoidable accident" is a bias expression, that is, it inclines the minds of the jurors one way or the other. If we are now going to begin to limit the language of the instructions, someone will undoubtedly next tackle the term "an act of God." "Unavoidable accident" and "an act of God" frequently have the same meaning. When we have left to the trial judge nothing but insipid words, the instructions will be of that character. Or, if the trial judge can use nothing but legalistic terms, the instructions will mean even less to the jury than they now do.

The term "unavoidable accident" is one which every juror understands. Terms of that kind rather than words selected from the law dictionaries should be employed in the instructions. The jury must catch "on the fly" the meaning of the instructions. It will grasp their significance much more readily if terms such as "unavoidable accident" are employed than if the trial judge speaks of accidents in which neither party was guilty of negligence.

Although I dissent from the foregoing part of the decision, I concur in all other parts, including the result.