Michael E. KOLL, Administrator of the Estate of David Joseph Koll, Deceased, and Michael E. Koll, Individually, Appellants,

v.

MANATT'S TRANSPORTATION CO., and Michael Manatt, Appellees.

No. 2–58076.

Supreme Court of Iowa.

April 20, 1977.

Bierman & Bierman, P. C., Grinnell, for appellants.

A. Roger Witke and Thomas S. Reavely, Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellees.

Heard before MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

This wrongful death suit arose from a fatal accident in which a young workman lost his life July 13, 1972. Trial to a jury resulted in a defendant's verdict. This appeal challenges the "unavoidable accident" instruction, a trial court ruling striking certain specifications of negligence, and a trial court ruling denying a motion for permission to amend to conform with the proof. We do not reach a third assignment because it involves a matter not likely to recur. We reverse the trial court and remand the case for a new trial.

During June and July of 1972 Manatt's, Inc. was resurfacing the shoulder of Interstate Highway 80. At the scene was a truck owned by Manatt's Transportation Co. Manatt's Transportation Co. is a distinct legal entity from Manatt's, Inc., though management of the two corporations is identical. The truck was being driven by Michael Manatt, an employee of Manatt's Transportation Co. The truck was delivering gravel to a gravel spreader, referred to in the record as a "chipper."

The work consisted of spraying oil on the shoulder, depositing gravel over the oil, and rolling the gravel. A truck called an "oil distributor" was used to spray oil on the shoulder. The chipper followed the oil distributor and deposited gravel on the oil and the shoulder. In depositing gravel the chipper was coupled to the back of a dump truck filled with gravel. As the chipper proceeded down the shoulder it pulled the dump truck behind it. When a dump truck became unloaded it was detached from the chipper and another dump truck would then be backed up to the chipper for attachment. A line of loaded dump trucks was backed down the highway lane nearest the shoulder being repaired to await attachment. The dump trucks would be backed up when the drivers observed in their rearview mirrors the other trucks backing up. The only time a signalman was used was when a particular truck was to be attached to the chipper or at certain points when a particular truck was crossing a line of traffic.

A group of workmen made up a "patching crew" which followed the chipper and its attached dump truck. One of the crew's jobs was to stand on the shoulder and pull any gravel deposited on the highway onto the shoulder.

David Koll, plaintiff's decedent, (decedent) was a member of the patching crew. He had recently graduated from high school and thereafter began his employment with Manatt's, Inc. At approximately 3:30 p. m. July 13, 1972 the truck owned by Manatt's Transportation Co. and driven by Michael Manatt backed over decedent causing his death.

The truck was a tandem vehicle with a 14 foot dump box. It was equipped with a

back-up bell located on the right dual wheels. In backing, Michael Manatt used two attached rearview mirrors, one mounted on each side of the truck. Each mirror was approximately five inches wide and 15 inches high. When the accident occurred the truck was loaded with gravel and was in a line of trucks being backed toward the chipper.

Immediately prior to the accident the patching crew was caught up and closer to the trucks than normal. The crew was hurrying. Decedent was standing on the shoulder next to the pavement pulling rock from the pavement onto the shoulder.

Plaintiff contends the truck either struck decedent or his broom causing him to trip over the broom and fall into the path of the right rear wheels of the truck. Defendants contend decedent tripped over the broom of his own accord, fell to the pavement, and was then run over. There was much testimony the back-up bell on the truck was audible on the day of the accident. One member of the patching crew testified he did not recall hearing such a bell. Plaintiff is decedent's father and brings this action in his own behalf and as administrator of decedent's estate for wrongful death.

I. Over plaintiff's protest the trial court submitted the following jury instruction:

"Instruction No. 21. You are instructed that the law recognizes what is termed an unavoidable or inevitable accident. These terms do not mean that it was impossible to avoid an accident, but simply denote that the accident occurred without having been proximately caused by negligence.

"In this case there is testimony that the deceased, David Koll, tripped, stumbled or lurched into the path of the truck Michael Manatt was backing at a point in time when there was no time for the truck to stop. If you find that David Koll did so trip, stumble or lurch into the path of the truck Michael Manatt was backing and that said trip, stumble or lurch took David Koll from a position on the shoulder where he would not have been struck by the truck and caused him to enter and be upon the roadway in the path of the backing truck,

then you may find that David Koll's death was an unavoidable accident not proximately caused by negligence, and if you so find your verdict would be for defendants on both counts of the petition of plaintiffs."

The unavoidable accident instruction has never found outright approval in our cases, but until now has managed to escape outright disapproval. In *Cavanaugh v. Jepson,* 167 N.W.2d 616, 622 (Iowa 1969) we said: "We have never gone so far as to condemn the doctrine of unavoidable accident, but it is virtually impossible to discover in our decisions any clear-cut approval of it." In *Cavanaugh* we reversed a judgment of the trial court for giving the instruction under circumstances similar to the instant case. We said the doctrine could have no application where the issue is which of two litigants was negligent.

Although our holding in *Cavanaugh* would in any event require reversal for giving the instruction in the instant case, in which negligence and contributory negligence were issues, we elect to base the reversal on an outright condemnation of the doctrine. In *Cavanaugh,* 167 N.W.2d at 622 we quoted from *Butigan v. Yellow Cab Co.,* 49 Cal.2d 652, 658, 320 P.2d 500, 504, 65 A.L.R.2d 1, 6–7 (1958):

" * * * 'In reality, the so-called defense of unavoidable accident has no legitimate place in our pleading. It appears to be an obsolete remnant from a time when damages for injuries to person or property directly caused by a voluntary act of the defendant could be recovered in an action of trespass and when strict liability would be imposed unless the defendant proved that the injury was caused through "inevitable accident" ' * * * The instruction is not only unnecessary, but it is also confusing."

We again concur in these sentiments. We think the time has come to eliminate the confusion caused by attempting to apply a doctrine which actually means nothing beyond a denial by a defendant that any negligence of his was a proximate cause of the injury. The instruction " * * *

merely restates a feature of the law of negligence which in substance is necessarily covered by proper instructions on negligence, burden of proof, and proximate cause * * *. [When given, it] * * * operates to overemphasize the defendant's case, and is apt to confuse and mislead." Annot., 65 A.L.R.2d 12, 21.

The instruction has elsewhere been disapproved. See *Alaska Brick Co. v. McCoy,* 400 P.2d 454 (Alaska); *O'Donnell v. Maves,* 103 Ariz. 28, 436 P.2d 577; *Schoen v. Boulder Stage Lines, Inc.,* 159 Colo. 531, 412 P.2d 905; *Schaub v. Linehan,* 92 Idaho 332, 442 P.2d 742; *Miller v. Alvey,* 246 Ind. 560, 207 N.E.2d 633; *Graham v. Rolandson,* 150 Mont. 270, 435 P.2d 263; *Fenton v. Aleshire,* 238 Or. 24, 393 P.2d 217; *Camaras v. Moran,* 100 R.I. 717, 219 A.2d 487.

 We join these states and hold it is error to give the unavoidable accident instruction. Such error was reversible in the instant case. Similar circumstances yielded a reversal in *Cavanaugh, supra,* where we merely *questioned* the worth of the instruction. These circumstances (the issue is which of two litigants was negligent) *demand* reversal here upon our disapproval of the instruction.

II. Plaintiff's petition alleged defendants were negligent in violating two provisions of both the federal and state safety standards statutes (OSHA and IOSHA).

Subparagraph 4c asserted defendants were negligent "[i]n violating section 88.4 of the Code of Iowa and 29 USC, § 654(a)(1)(2)."

Subparagraph 4d asserted defendants were negligent "[i]n violating federal occupational safety and health standards, § 1518.601(b)(4)(i)(ii) 36 Fed.Reg. 7386 (April 17, 1971) and Iowa departmental rules, bureau of labor 10.1(88)."

 Evidence of these standards was excluded during trial. At the close of evidence the trial court sustained defendant's motion to strike the claimed violation of the standards as specifications of negligence.

In his second assignment plaintiff contends violations of the standards are negligence per se, or, in the alternative, evidence of negligence. The trial court did not explain the basis for the rulings so we have no way of knowing their basis. The trial court may have believed OSHA and IOSHA standards did not bear on the question of defendant's negligence. The trial court may have believed no foundation was laid for their introduction. Of course if either view supports the trial court the assignment is without merit. We believe the standards were material and relevant on the question of defendant's negligence but the evidence was properly excluded and the specifications were properly stricken because there was no competent evidence of their violation.

The OSHA standards articulated in both federal and state provisions are identical. They provide:

"No employer shall use any motor vehicle equipment having an obstructed view to the rear unless: (i) the vehicle has a reverse signal alarm audible above the surrounding noise level or: (ii) the vehicle is backed up only when an observer signals that it is safe to do so."

These standards formed the basis for the specification of negligence alleged in paragraph 4d of plaintiff's petition.

 We proceed then to consider whether violation of the standards was evidence of defendants' negligence. Violation of the OSHA standard would not directly give rise to a cause of action for plaintiff because decedent was not an employee of Manatt's Transportation Co., the alleged tort feasor.[1] *Jeter v. St. Regis Paper Co.,* 507 F.2d 973 (5 Cir. 1975); *Russell v. Bartley,* 494 F.2d 334 (6 Cir. 1974); *Skidmore v. Travelers Insurance Company,* 356 F.Supp. 670 (E.D.La.1973); *Hare v. Federal Compress and Warehouse Co.,* 359 F.Supp. 214 (N.D.Miss.1973). IOSHA should be interpreted similarly to OSHA under the principle federal interpretations are persuasive

---

1. There is no challenge to the legitimacy of the separate corporate identities of Manatt's, Inc., decedent's employer, and Manatt's Transportation Co., a defendant.

when a state statute is patterned after a federal statute. See *Saxton v. State,* 206 N.W.2d 85, 86 (Iowa 1973) and authorities.

We have never been called upon to consider the effect on nonemployees of OSHA or IOSHA violations. But general principles have long been settled:

 " \* \* \* [I]f a statute lays down a rule or regulation of conduct specifically designed for the safety and protection of persons or property, injuries proximately resulting from its violation to one who, under the circumstances of the case, is within its purview, and free from contributory negligence, would be actionable, as for negligence *per se.* Such a violation of a positive statutory enactment need not involve the element of willfulness. It is of itself negligence. (Authorities).

 "Cases of another class are illustrated by those holding that the violation of statutory or municipal regulations constituting 'the law of the road' is *prima facie,* but not conclusively negligence. (Authorities). Generally speaking, the harm for which the action is brought must be of the kind which the statute was intended to prevent; and the person injured, in order to recover, must be within the class which it was intended to protect. (Authorities). But even though the injury complained of is not within the purview of the statute, the disregard of statutory duty may be a material fact, and evidence of negligence. (Authorities).

 "A general statutory duty is ordinarily for the benefit of all persons who are likely to be exposed to injury from its nonobservance. (Authorities)." *Hansen v. Kemmish,* 201 Iowa 1008, 1011–1012, 208 N.W. 277, 279 (1926).

We quoted *Hansen* with approval in *Peters v. Lyons,* 168 N.W.2d 759, 766 (Iowa 1969). We said:

"This is not the situation considered in *Lattner v. Immaculate Conception Church,* 255 Iowa 120, 129, 121 N.W.2d 639. There defendant urged the violation of a statute does not amount to negligence unless the plaintiff was a member of the class the statute is designed to protect and the harm is one the statute is designed to prevent. We recognized the rule has much support but declined to follow it, primarily on the authority of *Hansen v. Kemmish,* 201 Iowa 1008, 1012, 208 N.W. 277, 279; 45 A.L.R. 498, where the Iowa rule is stated: 'A general statutory duty is ordinarily for the benefit of all persons who are likely to be exposed to injury from its nonobservance.' As between an injured party and the violator of a statute or ordinance, we adhere to those precedents. \* \* \*.'"

Although we recognize our holdings on this question are not shared in all states they are not without support. See Prosser, Law of Torts, Fourth Ed., § 36, pp. 200–202; The Restatement of Torts Second, § 288B, Comment d.

 Under these general principles we hold violation by an employer of an OSHA or IOSHA standard is *negligence per se* as to his employee. Such a violation is *evidence of negligence* as to all persons who are likely to be exposed to injury as a result of the violation. Plaintiff's decedent, though not an employee, was exposed to injury from the alleged violation in the instant case. Hence a violation of OSHA and IOSHA standards was evidence of negligence on the part of Manatt's Transportation Co. Assuming a proper foundation had been laid the trial court should have received the evidence and instructed the jury accordingly.

Defendant next argues there was no competent evidence the standards were violated and hence there was no foundation for admission of the testimony. We agree.

It will be noted the specific standards are alternative. They can be satisfied by either of two means: (1) providing a reverse signal alarm audible above surrounding noise level; or (2) providing an observer to signal the driver it is safe to back up. The parties agree no observer was provided. Defendant complied with the standard, if at all, by providing a reverse signal alarm. Defendant insists that every witness called at trial by either side testified there were back-up bells on the truck which were audible above

the surrounding noise level. Plaintiff on the other hand points to the testimony of one witness, Robert Lawrie, as showing a violation of the signal alarm requirement. Lawrie's testimony on the subject was as follows:

"Q. Do you recall immediately prior to Dave Koll's death hearing a bell on Mike Manatt's truck? A. No.

"Q. What experience, if any, did you have with back-up bells on the construction site? A. There were back-up bells on the construction site.

"Q. When would you hear these? A. Constantly. There were—every vehicle to my knowledge had back-up bells on them and they were a constant clatter.

"* * * *

"Q. How would you describe the noise level? Was it low, high, average? A. It was probably medium level, constant noise level.

"Q. With that noise level were you able to discern one backing truck from another backing truck, the back-up bells I'm referring to * * *? A. Yes. Due to relative intensity of the ringing sound. You could tell how close you were to a certain vehicle because of the volume of the bell."

Lawrie's statement he did not recall hearing a bell on Michael Manatt's truck immediately prior to the accident is the only evidence upon which plaintiff can rely to show a violation.

Courts have long wrestled with questions relating to the relative merits of positive and negative testimony. See II Wigmore on Evidence, Third Ed., § 664, pp. 777–782; 30 Am.Jur.2d, Evidence, § 1092, pp. 252–254. We considered the problem in many early cases including *Lockridge v. Railway Company*, 161 Iowa 74, 84–85, 140 N.W. 834, 837–838 (1913). In order for negative evidence to qualify as sufficient it must be shown the witness was so situated that in the ordinary course of events he would have heard or seen the fact had it occurred.

Lawrie's statement lacks this necessary foundation. Indeed it is highly doubtful Lawrie's statement even amounts to negative testimony at all. He did not testify the bell was not sounded nor that it was inaudible. He did not even testify directly he did not hear the bell. He merely testified he did not *recall* having heard the bell immediately prior to the accident. Most of all there is nothing to indicate the absence of recollection on the part of Lawrie would in any way indicate the bell was not sounded or was not audible.

Under these circumstances we hold evidence of OSHA and IOSHA standards was properly excluded not because they would not constitute evidence of negligence, but because no foundation was laid for their admission.

Plaintiff alternatively argues the trial court erred in striking specifications of OSHA and IOSHA standards relating to the general duty clause. Any evidence showing a violation of these standards related to the specific standards on backing a truck. Under both OSHA and IOSHA standards, where a specific section applies, the general duty clause ordinarily is inapplicable. *American Smelting & R. Co. v. Occupational S. & H. R. Com'n*, 501 F.2d 504, 512 (8 Cir. 1974). Manatt's Transportation Co. could not be deemed to violate the general duty clause by reason of violation of specific standards.

Plaintiff's second assignment is without merit.

III. Plaintiff separately complains of a denial of his application to amend his pleadings to conform with proof. This assignment need not be considered because it relates to a matter not likely to recur upon remand.

**REVERSED AND REMANDED.**