Argued and submitted April 1, affirmed December 5, 1986

# CHARMLEY,
*Respondent on Review,*

*v.*

# LEWIS,
*Petitioner on Review.*

## (TC A8202-00967, CA A31532, SC S32556)

729 P2d 567

Linde, J., concurred and filed opinion.

Peterson, C. J., dissented and filed opinion in which Campbell, J., joined.

Thomas W. Brown, Portland, argued the cause and filed the brief for petitioner on review. With him on the brief was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

Bernard Jolles, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Jolles, Sokol & Bernstein, P.C., Portland.

GILLETTE, J.

Linde, J., concurred and filed an opinion.

Peterson, C. J., dissented and filed an opinion which Campbell, J., joined.

## GILLETTE, J.

In this personal injury case, the trial court admitted evidence of plaintiff's "habit" of invariably using a particular crosswalk in crossing a street at a certain intersection. Plaintiff offered the evidence to prove that he must have been in that particular crosswalk when he was struck by defendant's car. A jury returned a verdict for plaintiff. Defendant appealed. The Court of Appeals affirmed. *Charmley v. Lewis,* 77 Or App 112, 711 P2d 984 (1985). We granted defendant's petition for review to determine whether the Court of Appeals erred in interpreting the requirements contained in Oregon Evidence Code (OEC) 406(2), concerning the admissibility of evidence of habit. We affirm the decision of the Court of Appeals.

Plaintiff, a pedestrian, was injured in an accident with a car operated by defendant on the evening of November 20, 1981. The accident occurred while plaintiff was walking from his home to the grocery store. He was struck while crossing the street at a "T" intersection where North Syracuse ends at North Ida Street in Portland. It was — and we hesitate to say this — a dark and stormy night.

Crosswalks at the intersection are unmarked. A crucial issue at trial was whether plaintiff was crossing the street within the unmarked crosswalk when he was struck because, if he was, he had the right of way. *Former* ORS 487.290(1) (*repealed by* Or Laws 1983, ch 338, § 978, now codified (as further amended by Or Laws 1985, ch 16, § 279) as ORS 811.010(1)). Defendant testified that plaintiff ran out from behind a parked car outside the crosswalk. Plaintiff has no recollection of the accident and there were no other eyewitnesses to it.

Our focus on review is on plaintiff's testimony and the testimony of five other witnesses that it was plaintiff's invariable habit to cross the intersection within the unmarked crosswalk. Plaintiff testified that, when he crossed North Ida Street at the intersection, he always walked from the northwest corner to the northeast corner and then turned left and walked north about 20 feet along the sidewalk where he would enter the driveway to the store's parking lot. This route was within the unmarked crosswalk. Plaintiff testified that he never walked diagonally from the northwest corner to the

driveway of the grocery store and he never walked past the northwest corner to cross North Ida Street directly across from the driveway (and outside the unmarked crosswalk).

Five other witnesses testified as to plaintiff's habitual use of that same particular route. All testified that they had seen plaintiff cross straight across the street in the manner plaintiff described and never otherwise. The observations occurred on many occasions and at various times during the day and year, although most observations were made during the summer.

Plaintiff offered, and the trial court admitted, the challenged evidence under OEC 406:

"(1) Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

"(2) As used in this section, 'habit' means a person's regular practice of meeting a particular kind of situation with a specific, distinctive type of conduct."

Defendant contends that plaintiff's testimony and the testimony of the witnesses was not habit evidence under OEC 406(2) and was not otherwise admissible, so that its admission was prejudicial error requiring a new trial.

The probative value of admitting habit evidence is well recognized. *See* 1A Wigmore, Evidence 1607, § 92 (1983); Legislative Commentary to OEC 406 (hereafter "Legislative Commentary"), published in Kirkpatrick, Oregon Evidence (Butterworth 1982) (hereafter "Kirkpatrick"). Any discussion of habit evidence, however, should begin by distinguishing it from character evidence, with which it is often confused. McCormick distinguishes character from habit in the following manner:

"Character is a generalized description of a person's disposition in respect to a general trait, such as honesty, temperance or peacefulness. Habit, in the present context, is more specific. It denotes one's regular response to a repeated situation. If we speak of character for care we think of a person's tendency to act prudently in all the varying situations of life - in business, at home, in handling automobiles and in walking across the street. A habit, on the other hand, is

the person's regular practice of responding to a particular kind of situation with a specific type of conduct. Thus, a person may be in the habit of bounding down a certain stairway three steps at a time, of patronizing a particular pub after each day's work, or of driving his automobile without using a seatbelt. The doing of the habitual act may become semi-automatic, as with the driver who invariably signals before changing lanes." McCormick, Evidence, 575-76, § 195 (3d ed 1984).

The Federal Rules of Evidence have adopted this distinction between habit and character. FRE 406.

The history of OEC 406 shows that its authors had this distinction between character and habit very much in mind.[1] The Oregon Advisory Committee on Evidence Law Revision ("Advisory Committee"), which was appointed to propose revisions to Oregon evidence rules, began its consideration of "habit" by eliminating the no-eyewitness and corroboration requirements that had previously existed in Oregon law. Legislative Commentary to OEC 406; *see Fenton v. Aleshire,* 238 Or 24, 393 P2d 217 (1964) (illustrating application of former rule). The elimination of these requirements brought Oregon into conformity with the federal rule. The Advisory Committee, however, was concerned that the elimination of the no-eyewitness and corroboration requirements would lead to admission of character evidence "under the guise of habit." Legislative Commentary to OEC 406. In response to this concern, the Advisory Committee agreed that a narrow definition of habit, together with illustrative examples, would be inserted into the Commentary accompanying the rule. The definition did not stay in the Commentary, but instead ultimately became subsection (2) of OEC 406:

> "* * * '[H]abit' means a person's regular practice of meeting a particular kind of situation with a specific, distinctive type of conduct."

---

[1] We turn to the history of the creation of OEC 406 because the meaning of the rule is not entirely clear, at least in the context of the present case. Of course, in interpreting a statute, "[t]he starting point in every case involving a determination of legislative intent is the language of the statute itself." *Whipple v. Howser,* 291 Or 475, 479, 632 P2d 782 (1981); ORS 174.010. However:

> " "* * * When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." * * *.' " *State ex rel Cox v. Wilson,* 277 Or 747, 750, 562 P2d 172 (1977), *quoting U. S. v. Amer. Trucking Ass'ns,* 310 US 534, 542-44, 60 S Ct 1059, 84 L Ed 1345 (1940).

While OEC 406(1) is identical to the federal rule, FRE 406, OEC 406(2) is peculiar to Oregon evidence law. The crucial word in its definition is "distinctive." The Commentary to OEC 406 defines conduct as "distinctive" "if there is some aspect of the activity that would set it apart from the ordinary response to the same situation."

When the proposal was discussed by the Joint Legislative Committee on the Judiciary - Evidence (October 6, 1980), the definition of habit was taken from the Commentary and placed in subsection (2) of the rule. At that time, however, the term "distinctive" was deleted from the rule. There seemed to be a desire that the Oregon rule be shaped to track the federal rule in order that this state have the benefit of federal interpretation.

"Distinctive" was reinserted into the final version of the rule by the legislature just before final enactment of the evidence code. (Minutes, House Committee on the Judiciary, July 10, 1981.) Speaking to an earlier meeting of the committee, Judge (as he then was) Robert E. Jones explained that the Advisory Committee had originally inserted the term distinctive to keep out habits that everyone has, such as stopping at stop signs. He explained that the Advisory Committee felt and tried to reflect in the Commentary that habit had to be unique; admissible habit had to be acting in a given circumstance in an "ingrained" way. Minutes, House Committee on the Judiciary, Subcommittee 1, February 19, 1981.

In interpreting the words of, commentary on and legislative intent of OEC 406, Professor Kirkpatrick offers a useful approach for practitioners and judges by dividing the OEC 406(2) definition of habit into three elements. First, the evidence must be the regular practice of a person responding to a particular kind of situation; second, the habit must be specific; and, third, the habit must be distinctive. Kirkpatrick, *supra,* at 115-16. We agree with this approach. We turn to a consideration of each of these three elements.

*Regular Response to Particular Kind of Situation*

A person's regular response to a particular kind of situation has two components: the practice must be frequent, and it must be invariable or, at least, consistent. Kirkpatrick, *supra,* at 115. Plaintiff's evidence meets these criteria. The

testimony was that plaintiff went to the grocery store nearly every day and, when crossing at North Ida Street, he invariably crossed straight across the street within the unmarked crosswalk. Six witnesses, including plaintiff, attested to this behavior. Plaintiff's alleged habit was the sort of ingrained behavior envisioned by the Advisory Committee and legislature. The evidence was admissible under these criteria.

Defendant argues that, even if plaintiff met Kirkpatrick's frequency and invariability requirements, the requisite response to a "particular kind of situation" was not met because neither plaintiff nor his witnesses specifically testified to seeing plaintiff cross the street on rainy winter evenings. We disagree. There was testimony that plaintiff crossed North Ida Street in the manner described during all seasons and in the evening. The Court of Appeals correctly concluded that

> "the particularity requirement does not necessitate an exact duplication of the climatic conditions. Defendant's argument concerns the weight which the habit evidence deserves, and not its admissibility, and defendant did argue to the jury that plaintiff's practice on the night of the accident may have been different because of the rain." 77 Or App at 116-17 n 1.

## Habit Must Be Specific

The specificity requirement is the primary tool for weeding out character evidence when it is offered as habit evidence. For example,

> "[a] person's tendency to be accident-prone, or habitually careful, is probably too general to satisfy the definition of habit. However, a driver's behavior in always using a hand signal in addition to a turn signal or always traveling a particular route to the office may satisfy the specificity requirement." Kirkpatrick, *supra,* at 115-16.

Plaintiff's route was a specific response to going to the grocery store. Evidence of the route was not an indication of care. Plaintiff's attorney carefully limited testimony of plaintiff's habit to physical descriptions of where plaintiff crossed North Ida and how, not whether he was careful or that he always crossed all streets within the crosswalk.

Admission of plaintiff's evidence of habit is also consistent with the Legislative Commentary to OEC 406(2).

The Commentary cites as an example of habit the practice of a child in always using a particular crosswalk. *Fenton v. Aleshire, supra.* The facts of *Fenton* are similar to the present case. A young child was killed when struck by a motor vehicle while crossing the street one dark, rainy evening while she was apparently on her way home from her school playground. Defendant argued that the child was not within the crosswalk. Plaintiff had offered — and the trial court had admitted — evidence that it was the child's practice to cross at a particular crosswalk when crossing that street. While apparently accepting that the evidence showed a habit, this court held that, on retrial, the evidence should be excluded pursuant to the now discarded "no eyewitness" rule. 238 Or at 36-37. There is no suggestion in the opinion that, had there not been an eyewitness, the proferred evidence would have failed to qualify as proper habit evidence.

*Distinctiveness Requirement*

As noted, the distinctiveness requirement presents the real issue in this case. The two commentaries on OEC 406 — the legislature's and Kirkpatrick's — illustrate the interpretive problem posed by the requirement that the actor's response to the particular situation be "distinctive." The Legislative Commentary notes:

"*Subsection (2).* The Legislative Assembly felt it desirable to include a definition of 'habit' in Rule 406. *The definition is intended to forestall the use, as habit evidence, of evidence of conduct which in fact shows a character trait.*

"There has been much confusion between the concepts of habit and trait of character. Much character evidence has been smuggled into court under the guise of habit. A character trait, such as character for care, is a person's tendency to act in a certain way in all the varying situations of life — in business, in family life, in handling an automobile, in walking across the street. *A habit, on the other hand, is the person's regular practice of meeting a particular situation with a specific type of conduct which is distinctive. Conduct is 'distinctive' if there is some aspect of the activity that would set it apart from the ordinary response to the same situation.* For example, an individual who always stops a motor vehicle at a particular stop sign cannot be said to be in the 'habit' of stopping at the sign. The individual's behavior is not distinctive. It is a response that is required by law and that is typical of most drivers at the same intersection. However, if

the individual never stops at that particular sign, then that distinctive and specific conduct is 'habit.'

"Other examples of habit or routine practice can be found in Oregon case law. *State v. Mims,* 36 Or 315, 61 P 888 (1900) (habit of deceased to arm himself whenever he became involved in quarrel); *McMillan v. Montgomery,* 121 Or 28, 253 P 879 (1927) (practice of bank to give notice of dishonor); *Start v. Shell Oil Co.* [202 Or 99, 260 P2d 468 (1954)] (practice of employer to instruct stenographer to enclose materials with dictated letters, and of stenographer always to follow instructions); *Fenton v. Aleshire, supra* (habit of child to use particular cross-walk); *Krause v. Eugene Dodge,* [265 Or 486, 509 P2d 1199 (1973)] ('inflexible rule, habit and custom' of auto dealer to require that all buyer's orders be completely filled out before being signed by buyer); cf. *Blue v. City of Union,* 159 Or 5, 75 P2d 977 (1938) (evidence of person repeatedly riding horse rapidly and carelessly about streets of city not habit evidence)." (Emphasis added.)

Kirkpatrick comments:

"* * * [T]he third requirement — that the conduct be 'distinctive' — was apparently added to encourage a narrow construction of the rule. Although this requirement is emphasized by the Commentary, it seems likely to cause the greatest difficulty of interpretation. Merely because conduct is unusual or distinctive does not establish that it is a habit. On the other hand, many behaviors that would seem clearly to be habits are not distinctive. Many of the cases cited with approval in the Commentary where habit evidence was admitted under prior Oregon law do not involve distinctive conduct. It would not seem 'distinctive' for a stenographer to follow instructions, a child to use a particular crosswalk, or a car dealer to require orders to be completely filled out. Because the Commentary does not indicate an intention to overturn prior case law, courts should be flexible in interpreting the distinctiveness requirement when the regular practice and specific behavior requirements are clearly satisfied." Kirkpatrick, *supra,* at 116.

We have the same difficulty with "distinctive" that Professor Kirkpatrick has. The examples of habit in the Legislative Commentary are not all that "distinctive."[2] Is

---

[2] We do note, however, that Kirkpatrick may overstate his point when he questions the "distinctiveness" of a stenographer following instructions or a car dealer requiring that orders be completely filled out. Of those two examples, one — the car dealer case, *Krause v. Eugene Dodge,* 265 Or 486, 509 P2d 1199 (1973) — was clearly intended to be an example of "routine practice of an organization," not "habit." The

there some way of ascertaining more precisely what the drafters — and the legislature — had in mind?

Not definitively. While the Advisory Committee wanted a rule similar to the federal rule, it wanted a construction of the rule ensuring that character evidence was not admitted as habit and that admissible habit evidence was set apart from ordinary conduct. The Advisory Committee's rationale for choosing the term "distinctive" to further this aim is not clear. Different terms were proposed or discussed at different times during consideration of the habit rule, including "semi-automatic" (Advisory Committee meeting, April 9, 1976), "unique" (Advisory Committee meeting, October 22, 1976), "extraordinary or unusual" (*Id.; see also* Advisory Committee meeting, December 17, 1976), and "idiosyncratic" (House Committee on the Judiciary, Subcommittee 1, February 19, 1981). The Advisory Committee finally settled on "distinctive" with the understanding that examples from existing Oregon law would be inserted into the Commentary to illustrate what was intended. (Advisory Committee meetings December 17, 1976; January 21, 1977.)

The term "distinctive" must have some meaning outside of, or complementary to, the other requirements. The Advisory Committee thought it fairly characterized the examples of habit included in the Commentary. Thus, to the Committee, the habit of a child crossing a particular crosswalk, in *Fenton,* was distinctive, while an individual always stopping at a particular stop sign was not.

The specific use of *Fenton* as an illustrative example of habit evidence also was highlighted in the legislative discussion. Representative Mason, during the House Judiciary Subcommittee discussion of habit, stated

"[T]his section [then proposed 406] specifically rejects the no witness limitation of admissibility, then later the Commentary says evidence that a child used a particular crosswalk is

---

other — the stenographer case, *Start v. Shell Oil Co.,* 202 Or 99, 260 P2d 468 (1954) — was probably also intended to be an example of "routine practice of an organization," although its focus on *her* practice brings it closer to "habit." The distinction is important. By the terms of OEC 406, habit refers to individuals, routine practice refers to organizations. And subsection (2) of OEC 406 speaks only to *habit.* Its criteria do not, by the subsection's own terms, have to be met in order that evidence of the routine practice of an organization be admissible.

admissible as habit. *Fenton v. Aleshire.* I would assume that the particular crosswalk is that distinctive habit we've been talking about. Is that correct? And then it further discusses *Fenton v. Aleshire* down under the first paragraph, the relationship with existing law. This section changes existing Oregon law eliminating the requirement there be no eyewitness. Thus you could bring in the child's actions I assume in the *Fenton* case irregardless or regardless of whether or not there was eyewitnesses as long as you could show that the habit was distinctive? So the no eyewitness rule would be moot so long as the habit was distinctive."

Judge Jones responded, "That is right." Tape recording, House Committee on the Judiciary, Subcommittee 1, February 19, 1981, Tape 82, side B at 074-146.

■ In essence, the construction of "distinctive" for which the defendant argues is that it requires that the form of habit be unusual, if not unique. From the Commentary and legislative discussion, however, we conclude that the use of "distinctive" does not so much require that a certain act be wholly unusual, in the sense that no one else does it — although that condition would doubtless satisfy the rule — as that it at least be a semi-automatic and recurring response, beyond mere obedience to the law, by an actor confronted by a particular situation to which a variety of definable responses would be more or less equally reasonable.

Our view is supported by the dictionary definition. "Distinctive" means "having the quality of distinguishing; serving or used to distinguish or discriminate; characteristic, distinguishing." Oxford English Dictionary 526 (1971). "Distinctive" applied to the present context means behavior that has sufficient particular characteristics to permit it to be distinguished from all other reasonable responses to the same situation. That is, a behavior can only achieve the status of habit, under OEC 406(2), if the situation giving rise to it reasonably could be responded to in a variety of ways, each of which ways has unique characteristics by which it can be readily distinguished (*i.e.,* shown to be distinct) from the others.

Seen in this way, the choice of an intersection crosswalk by the child in *Fenton* is distinctive, not because it is unusual — one may assume that many people cross there —

but because it is a particular, describable choice separate from other possible choices available to the child, *e.g.,* jaywalking or selecting a different crosswalk. So construed, "distinctive" becomes truly complementary to the regularity and specificity criteria of OEC 406(2).

This evaluation of the use of *Fenton v. Aleshire* as an example of habit is also consonant with the other key example from the Commentary, *viz.,* it is not evidence of habit that a person always stops at a particular stop sign. A stop sign does not present, to one who approaches it, a variety of definable responses, each of which would be more or less equally reasonable. The only reasonable response is to stop. There is nothing from which the automatic response of stopping can be distinguished. (*Unreasonable* responses, on the other hand, may be distinctive by the very fact of their unreason. It would be evidence of habit, for example, if the driver always stopped by crashing into the sign or by pulling off the road or if the driver always drove past the sign without stopping.) The key to the present case is plaintiff's unfailing use of one of several reasonable and definable alternatives for crossing the street to reach the store.

■ The evidence that plaintiff always crossed this particular street within this particular crosswalk demonstrated an ingrained habit that meets the requirements of OEC 406. Plaintiff went to the grocery store nearly every day and invariably took the same route. Plaintiff's attorney limited testimony to descriptions of the route plaintiff took to the store, which reduced the likelihood that the evidence would be seen by the jury as a reflection of plaintiff's character. Certainly, the testimony, if believed, was probative. A crucial issue in the case was the location of plaintiff when the accident occurred. Plaintiff's evidence directly contradicted that given by defendant. It met all three of the criteria established by OEC 406. The trial court did not err in admitting it.

The decision of the Court of Appeals and of the trial court is affirmed.

**LINDE, J.,** concurring.

It is unfortunate that the drafters of OEC 406 compromised their differing views and apprehensions about habit

evidence by inserting the adjective "distinctive" without stating more clearly from what a person's habitual conduct must be distinct in order to be admitted. I agree with the Chief Justice that the Court's opinion does not successfully give meaning to that requirement.

It is also unfortunate that everyone debating the addition of "distinctive" to the rule and everyone debating the present case have had their minds so firmly fixed on the uses of habit evidence in automobile tort actions that there are few clues as to how the generalizations formulated in describing a "distinctive" habit in crossing a street would fit other kinds of habitual conduct in very different contexts. But, of course, the rule does not apply only to traffic accidents. Some examples of quite different cases were inserted in the Legislative Commentary quoted by the Court, and many more can be found in other state and federal courts. I write primarily to note that the present opinion should be understood to apply specifically to the kind of conduct involved in this case and that the meaning of "distinctive" remains open for further argument in other settings.

Perhaps "distinctive" was chosen to express the idea of habitual conduct different from other people's behavior, but there is no obvious reason for this. If evidence of a person's invariable practice under the relevant circumstances tends to support an inference that the person more likely than not behaved in the same way on a particular occasion, why does it matter whether other people might behave differently? And how is the common behavior of other people to be shown before a trial judge rules on the admissibility of evidence, if that fact is disputed?

Why does it matter, moreover, how frequently the occasion for "habitual" conduct arises, as the Court quotes Professor Kirkpatrick, as long as one repeatedly responds in the same way whenever it arises? Is evidence admissible that a person habitually deposited a weekly paycheck on payday, but not a monthly paycheck or a quarterly dividend check? That a family habitually ate fish on Friday nights but not that they invariably ate turkey on Thanksgiving Day? If the fact to be inferred is what a man ate for Thanksgiving dinner, why not look for "distinctiveness" from his ordinary meals rather than from the meals of other people? How frequently any class of

events occurs depends on how widely or narrowly the class is defined. If someone only signed one will in his life, may evidence that he read other legal documents carefully be admitted or not? That he read business letters carefully?

The facts in the present case do not call for defining the frequency or distinctiveness of a "regular practice" for all kinds of issues and types of behavior that may raise questions under OEC 406. The general rule is that relevant evidence, evidence "having any tendency to make the existence of any fact" of consequence more probable or less probable, OEC 401, is admissible unless there is some legal reason to exclude it. I am not persuaded that the drafters of OEC 406 meant to direct the courts to exclude the specific challenged evidence in this case. I therefore concur in the decision.

**PETERSON, C. J.,** dissenting.

The majority correctly states that the OEC 406(2) habit definition has three elements:

1.   The evidence must be "the regular practice of a person responding to a particular kind of situation."

2.   The habit must be "specific."

3.   The habit must be "distinctive."

The majority has, however, misapplied the rule that it adopts.

The evidence in this case only meets the requirements of elements 1 and 2. There is no evidence that the plaintiff's conduct was "distinctive."

There can be no question that in adding the words "a specific, distinctive type of conduct," the legislature intended a restrictive rule of admissibility. The Advisory Committee considered using the terms "extraordinary," "unusual," or "unique" and finally settled on "distinctive." The majority settles on a definition that "distinctive" means "behavior that has sufficient particular characteristics to permit it to be distinguished from all other reasonable responses to the same situation." *Charmley v. Lewis,* 302 Or 324, 334, 729 P2d 567 (1986). As I will explain below, that definition merely restates the specificity requirement of the rule; it does not address the distinctiveness requirement.

I read the word "distinctive" to mean more than

"different." It means "unusual" or "out of the ordinary." "Conduct is distinctive if there is some aspect of the activity that would set it apart from the ordinary response to the same situation." Legislative Commentary to OEC 406, *published in* Kirkpatrick, Oregon Evidence 114 (1982). Distinctive conduct might be legal or illegal, reasonable or unreasonable. Whatever the conduct, it must be unusual or not ordinary.

The very word "distinctive" implies that there must be a comparison of some kind. Something must distinguish that conduct from other conduct.

In determining whether conduct is a "distinctive type of conduct," these inquiries should be made:

1. Determine the issue for which the evidence is offered. Even if a particular person's conduct is distinctive in one sense, it may not be distinctive as to the issue in question. The trial court first must isolate the issue with relation to which the evidence is offered, and admit the evidence only if the actor's invariable past acts or responses were unusual or not ordinary.

2. The trial court must determine (a), whether there were several possible definable responses or choices to an actor confronted with a specific situation and (b), that the actor's invariable response or choice was not an ordinary or usual response or choice to the specific situation. The actor's invariable response or choice need not be a reasonable choice or even a lawful choice among several definable responses.

3. To be distinctive implies and likely requires a a comparison. In determining whether conduct is unusual or not ordinary, the trial court likely will be required to determine *the* comparison group or *a* comparison group. In determining the ordinary response, the comparison may be to other members of the community or to the hypothetical "reasonable person."

The legislative history quoted by the majority is not inconsistent with this analysis. *Charmley v. Lewis, supra,* 302 Or at 331. The paragraph beginning with the phrase "other examples of habit or routine practice can be found in Oregon case law" merely lists illustrative decisions of this court in some of which evidence of habit had been received and in others the evidence was not received.

*Fenton v. Aleshire,* 238 Or 24, 393 P2d 219 (1964) is one of a number of cases cited in which the evidence was not admitted. In *Fenton,* evidence of a child's consistent use of a particular crosswalk was not held admissible. The court stated:

> "In view of another trial, however, it should be stated that we have given no consideration to evidence admitted over objection that it was the habit of the deceased to use the crosswalk on Southwest Parkway. The defendant Aleshire testified that the accident occurred a considerable distance east of the crosswalk. The great weight of authority in this country supports the rule that '* * * evidence of the general habits of a person is not admissible for the purpose of showing the nature of his conduct upon a specific occasion * * *.' " *Id.* at 36-37.

The colloquy between Representative Mason and Judge Jones quoted in the majority opinion may not support the conclusion reached by the majority. Representative Mason asked,

> "Thus you could bring in the child's actions, I assume in the Fenton case irregardless or regardless of whether or not there was eyewitnesses as long as you could show that the habit was distinctive? So the no eyewitness rule would be moot so long as the habit was distinctive." Tape Recording, Subcommittee I of the House Committee on the Judiciary, February 19, 1981, Tape 82, Side B at 074-146.

The colloquy largely concerned the "no eye witness rule." I am not convinced that the exchange concerned evidence that a person always walked within a crosswalk.

Even conceding that the colloquy supports the majority, I am convinced that the only way that we can give meaning to this statute is to require that the term "distinctive" means something other than "specific" and something more than "different." In considering legislative intent, one should keep in mind the in-and-out history of the word "distinctive."

Before the full Interim Committee, Senators Jernstedt and Brown led a discussion that resulted in the deletion of the distinctiveness requirement. The senators apparently objected because the term "distinctive" connotes something unique and unusual. Such a requirement would limit habit to conduct out-of-the-ordinary, rather than apply

to any invariable repetitive conduct that might be characteristic of many people. Minutes, Joint Committee on the Judiciary 5 (October 6, 1980).

The Jernstedt and Brown argument did not survive the House Judiciary's consideration of OEC 406. The rule proposed by the Interim Committee to the legislature was again amended at the suggestion of Representative Mason to include the distinctiveness requirement. Minutes, Subcommittee 1 of the House Committee on the Judiciary 9 (February 19, 1981).

At the House hearings, Judge Jones stated that habit evidence deals with a person's "idiosyncrasies."[1] *Id.* at 6. He stated that the Advisory Committee tightened up the Commentary from the federal rule and that the Advisory Committee wanted to avoid evidence of habit of what everyone does. *Id.*

Chairperson Mason stated that one of the problems with the proposal is that the word "habit" in the rule itself indicates "mundane" things, and that it does not indicate distinctive habits. *Id.* He suggested putting the word distinctive into the rule itself. *Id.* Judge Jones stated that that would be fine, and that such an amendment would tighten up the rule even more. *Id.* Mason suggested that the term would keep out "general" habit (as opposed to "distinctive" habits). *Id.* at 7.

The majority states that "distinctive"

"means behavior that has sufficient particular characteristics to permit it to be distinguished from all other reasonable responses to the same situation. That is, a regular behavior can achieve the status of habit under OEC 406(2) if the situation giving rise to it reasonably could be responded to in a variety of ways, each of which ways has unique characteristics by which it can be readily distinguished (i.e. shown to be distinct) from the others." *Charmley v. Lewis, supra,* 302 Or at 334-335.

That definition makes all habit admissible merely by showing that it is regular (element number 1) and specific

---

[1] Websters New International Dictionary, 1237 (2d ed 1959) defines "idiosyncratic" as "of *peculiar* temper or disposition, of one's *peculiar* individual character." (Emphasis added.)

(element number 2), for almost all repeated, specific conduct is "distinctive" under that definition. Almost any conduct is different from other conduct. "Distinctive" has to mean more than different.

Many, perhaps most, situations involve a choice among alternatives. Under the majority opinion, one's invariable practice of following one choice among multiple available alternatives would meet the requirement of the rule, even if the choice made was that of most persons and was a mundane choice. With the addition of the word "distinctive," Oregon departed from the traditional definition of habit. That a given response to a certain stimulus is reasonable, regular and specific does not make it distinctive. The drafters may have felt that evidence of regularly repeated conduct that was no more than the ordinary response to a particular situation would be given undue weight, especially when directed at the key fact at issue.

The distinctiveness requirement bars evidence of average or ordinary conduct or tendencies (however frequent and invariable) to act in a certain manner from determining a key fact at issue, particularly with respect to whether due care was exercised.

Under its federal counterpart, the evidence is admissible. Under OEC 406(2) it is not. I would reverse.

Campbell, J. joins in this dissent.